PEOPLE v. BERRY

1. CRIMINAL LAW—CONFLICTING TESTIMONY—INSTRUCTIONS TO JURY
—PRESUMPTION OF INNOCENCE.
Failure to give a criminal defendant's requested instruction to
jury that if the testimony of different witnesses is in direct
conflict and both versions as given cannot be true and there
is reasonable doubt as to which story is true, the jury must
accept the version consistent with the innocence of defend-
ant was not error where the trial judge charged the jury fully
concerning the presumption of innocence, reasonable doubt, and
tests for determining credibility of witnesses.

2. CRIMINAL LAW—WITNESSES—REFUSAL TO ANSWER QUESTIONS—
RIGHT OF CONFRONTATION—PREJUDICE.
A defendant, charged as an accessory, was not denied his right
of confrontation where a defense witness, a principal in the
crime charged, testified but refused to answer two of defense
counsel's questions and six of the prosecutor's questions on
Fifth Amendment grounds, where defense counsel successfully
extracted the desired answers by rephrasing the questions and
where defendant was not prejudiced by the refusal to answer
the prosecutor's questions.

3. INDICTMENT AND INFORMATION—WAIVER OF DEFECTS—PLEA OF
GUILTY.
A plea of not guilty waives any defect in the information.

Appeal from Recorder's Court of Detroit, Robert
E. DeMascio, J.   Submitted Division 1 June 15,

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 747 *et seq.*
[2] 53 Am Jur, Trial § 36 *et seq.*
[3] 21 Am Jur 2d, Criminal Law § 495.
41 Am Jur 2d, Indictments and Informations § 300.

(1)

1971, at Detroit.  (Docket No. 7312.)  Decided September 27, 1971.

John W. Berry, Sr., was convicted of first-degree murder.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Armand D. Bove,* for defendant on appeal.

Before: T. M. Burns, P. J., and Holbrook and McGregor, JJ.

Holbrook, J.  Defendant appeals from conviction by jury verdict of first-degree murder in violation of MCLA § 750.316 (Stat Ann 1954 Rev § 28.548). He was given the mandatory sentence of life imprisonment.

Defendant was charged with aiding and abetting a robbery wherein a homicide resulted.

On November 4, 1967, a Detroit News substation on Appoline Street near 7 Mile Road was robbed by two armed men.  During the course of the robbery the station manager, Mr. Gerald Vincent McCullough, was shot and killed after being forced to lay facedown on the floor.

On November 16, 1967, Thomas Perry Bragg and Victor Marvin Daniels were arrested in Buffalo, New York by Federal agents in connection with the robbery of the Wayne Oakland Bank here in Michigan.

While held in New York they were interrogated by two detectives from the Detroit Police Department who flew to New York.

On the last day of the interrogations, Bragg and Daniels implicated John W. Berry, Sr., as being involved with them in planning the substation robbery.

Defendant was then arrested at his home on December 19, 1967.

At the time of defendant's prosecution neither Bragg nor Daniels had been tried in connection with this crime.

Testimony by a newspaper boy at the trial established that two weeks prior to the robbery, he had been approached on the street in the immediate vicinity and solicited by a man to give information concerning the operations of the substation. Bragg testified he was present and that the man was defendant. However, there was no identification by the paper boy that Berry was that person.

At the time of the robbery Berry had been lodged in the Oakland County Jail. He had been there from October 31, 1967, until November 14, 1967, making it physically impossible for him to be present at the scene.

Both Bragg and Daniels took the stand during the proceedings.

According to Bragg, had it not been for his incarceration at the time, Berry was going to drive the getaway car. Bragg testified that $200 was acquired from the robbery and that he and Daniels split it. He further testified subsequently he and Daniels gave Berry $1,300 which represented the portion Berry was to receive from the substation robbery had there been the amount available they had antici-

pated receiving from the robbery. According to Bragg this money came from a bank robbery.

Bragg testified that the gun he used in the robbery belonged to Berry, and that Berry had given it to Daniels to give to Bragg; however, Bragg never saw Berry give it to Daniels. Bragg then said he witnessed Daniels giving the gun back to Berry after the robbery, at which time the gun used by Daniels, the murder weapon, was broken into pieces and thrown in the river.

Daniels testified that all statements he made in New York implicating Berry were untrue and the only reason he made them was because he was led to believe by his interrogators that Berry had informed on him concerning the substation robbery. He testified that he and Bragg had never given any money to Berry and that Berry had nothing to do with the planning of the crime.

Defendant raises four issues which we deal with in our order.

## I.

*Whether the trial court's refusal to give one of defendant's requested instructions was a failure to instruct the jury on a point of substantive law, resulting in reversible error?*

The denied instruction is as follows:

"I charge you ladies and gentlemen of the jury that when testimony such as there is in this cause is directly conflicting and both versions as given to you cannot be true and there is a reasonable doubt as to which story is true, it is your duty to accept that version which is consistent with the innocence of the defendant. *People* v. *Crofoot* (1931), 254 Mich 167."

Upon denial, the judge informed defense counsel that he would cover the essence of this instruction in his charge to the jury.

The pertinent part of the charge is set out herein:

"Now, the burden of proof is always on the people and it never shifts. That is because the defendant in any criminal case, as the defendant in this case, is presumed to be innocent of the charge brought against him, and that presumption of innocence attaches with the defendant at the beginning of the trial and abides with him throughout the entire trial and throughout your deliberations in the jury room until each of you is satisfied beyond a reasonable doubt by the testimony given and the exhibits presented that the defendant is guilty of the charge brought against him.

"Now, the mere fact that he has been brought here on trial, that he has been arrested and brought into this court by the ordinary criminal processes, should not be considered by you as in any way to raise the presumption that he is guilty. Because, as I have said to you, the presumption that abides with him is that presumption of innocence.

\*    \*    \*

"What is a reasonable doubt? A reasonable doubt, members of the jury, is just what the words imply. It is a doubt founded in reason. It is a doubt for which you can give a reason for entertaining. It is a doubt growing out of the evidence or lack of evidence in the case. It is a doubt which would cause you to hesitate in the ordinary affairs of your own everyday life. \*    \*    \*

"Members of the jury, in this particular case there was testimony of one of the codefendants. And I charge you that the testimony of a self-accused conspirator or accomplice should be carefully scrutinized to determine to what other extent it is concerned, upon the extent to which it is cor-

roborated. Such testimony should be received by you with utmost caution and care because of the interest such witness may have in the outcome of the trial and his desire as a result of his interest to color or shade his testimony.

"Now, that is so, members of the jury, because the credibility of all witnesses is for the jury. You are the sole judges of the credibility of the witnesses sworn here in open court before you and to the weight to be given to their testimony. A credible witness, members of the jury, is one who gives competent testimony worthy of belief. In determining the credibility of a witness you may consider his conduct, manner and bearing on the witness stand, his interest in the outcome of the case. You may consider his opportunity to know and to remember the events about which he speaks. You may consider his willingness to speak the truth and all the surrounding circumstances that show his willingness to testify to the truth. You may consider his reliability or unreliability, his apparent fairness or want of fairness, the fact of whether the witness was corroborated or contradicted by other witnesses, the probability or improbability of the truth of the statements that he made in view of all other evidence and other facts and circumstances apparent in the trial."

In *People* v. *Larco* (1951), 331 Mich 420, the *Crofoot* charge was also requested and denied, and the Court held as long as the trial judge had charged the jury fully concerning presumption of innocence, reasonable doubt, and tests for determining credibility of witnesses, denial of the charge was not grounds for reversal.

Comparing the charge given in this cause with the rules set out in the *Larco* case, we find no reversible error present.

## II.

*Whether an individual's constitutional preroga-
tive of confrontation is violated when, tried as an
accessory, he is precluded from thoroughly examin-
ing a principal because of improper concessions
under the Fifth Amendment?*

At the trial Victor Daniels was called as a defense
witness. He was informed by the court that by
taking the stand he would waive his right against
self-incrimination. During direct examination he
was allowed to invoke the Fifth Amendment on two
occasions. During cross-examination the right was
invoked on six occasions. The judge allowed the
questions to go unanswered.

Defendant relies upon *People* v. *Henderson*
(1968), 10 Mich App 333, 337, which states:

"To allow a participant to testify as to participa-
tion in a crime and then permit him to refuse to
answer certain questions on the basis of possible
self-incrimination would deny the accused on trial
the constitutional right of confrontation."

The purpose of the rule is to protect the defendant's
right to confront witnesses used to testify against
him. Even though a review of the transcript shows
two occasions when the right was invoked on direct
examination, defense counsel successfully extracted
answers desired by rephrasing the questions. It
is evident the defendant was not injured or preju-
diced by invocation of the Fifth Amendment by
witness Daniels.

Even though it is true that the witness waived his
Fifth Amendment rights by taking the stand, no
prejudice resulted to defendant from the witness's
refusal to answer the prosecution's questions, and
therefore we are constrained to hold that reversal is
not merited on this issue.

## III.

*Whether the criminal information improperly apprised defendant as to what he must defend against?*

Defendant claims the information was inadequate. This issue was not raised at the trial court level and we decline a determination here. However, a review of the record shows that defendant Berry pleaded not guilty to the charge against him. The recent case of *People* v. *Minton* (1970), 25 Mich App 225, holds that any defect in the information is waved by a plea of not guilty.

## IV.

*Whether the trial court failed to apprise the jury that the offense with which defendant was charged demanded a determination of* scienter?

A review of the transcript shows that this issue was not raised in the trial court, nor the instructions objected to in order to preserve it on appeal. The rule is well-settled that failure to raise an objection in the trial court eliminates the availability of a determination on appeal. *People* v. *Mason* (1970), 22 Mich App 595.

Affirmed.

All concurred.