PEOPLE v KELLY

Docket No. 199995. Submitted August 11, 1998, at Detroit. Decided September 25, 1998, at 9:10 A.M.

Albert D. Kelly, Jr., was convicted by a jury in the Detroit Recorder's Court, George W. Crockett, III, of first-degree premeditated murder, first-degree felony murder, and armed robbery. The conviction of felony murder was vacated, and the defendant was sentenced for the premeditated murder and armed robbery convictions. The defendant appealed.

The Court of Appeals *held*:

1. The defendant argues that the trial court erred in failing to suppress as evidence two statements made by him while in police custody after his arrest, because his arrest was unlawfully made without probable cause and the statements were the fruit of that unlawful arrest. The record clearly demonstrates that the arresting officer had at the time of the defendant's arrest virtually no evidence connecting the defendant with the crime and basically conceded that the defendant had been arrested for questioning because he had been the boyfriend of the victim until shortly before the murder. Because the arrest was done without probable cause and for the purpose of questioning, a practice condemned by both the United States Supreme Court and the appellate courts of this state, the arrest was unlawful, and the trial court erred in finding that the arrest was proper.

2. The fact that the original arrest was made unlawfully is not dispositive of the question whether the subsequently given statements should have been suppressed as evidence. It is only where the unlawful detention has been used as a tool to procure a custodial statement from a detainee that the statement must be suppressed under the exclusionary rule. Intervening circumstances can break the causal chain between an unlawful arrest and a custodial statement so as to render the custodial statement free from the taint of the illegal arrest.

3. A custodial statement given by a detainee following an unlawful arrest need not be suppressed as evidence if the police, before the challenged custodial statement is given, have accumulated evidence independent of any taint of the unlawful arrest sufficient to

support a finding of probable cause to arrest the defendant. In the present case, the police, before the defendant gave his second statement, had discovered adequate evidence linking the defendant to the murder to establish probable cause to arrest the defendant. Accordingly, the trial court did not err in admitting the defendant's second statement into evidence.

4. The admission of the defendant's first statement into evidence, even if the admission of that statement is assumed to be error because that statement was a product of an illegal arrest, was harmless beyond a reasonable doubt in light of the properly admitted second statement and the other evidence introduced against the defendant.

5. The defendant was not denied a fair trial by reason of the brief and passing remarks of a prosecution witness concerning the defendant's parole status and the brief reference in the defendant's first statement that he had visited his probation officer, inasmuch as the prosecution did not pursue these matters and the defense made no objection and request for a curative instruction. Although the police officer who searched the house of the defendant's father should not have mentioned the photographs of a nude female that had been found during the search, because those photographs were irrelevant, that reference did not deny the defendant a fair and impartial trial, in view of the fact that the photographs were not offered or admitted into evidence or shown to the jury and the prosecution made no further inquiry concerning or reference to those photographs.

6. The prosecution properly inquired of a witness, who had testified that he had been approached by two men offering to sell him some items allegedly taken from the victim's home but who had testified "I don't know" in response to the question whether he saw either of the men in the courtroom, whether he was afraid to come to court and to identify either of the men who had approached him. Evidence of the witness' fear had a bearing on the witness' inability to identify the defendant.

7. The statements made by the prosecution during its closing argument represented fair and proper comment regarding the evidence presented at trial and the inferences that could be drawn from that evidence and did not amount to unsworn personal testimony.

8. There was sufficient evidence to sustain each of the convictions. The evidence supports a permissible inference by the jury that the killing of the victim was done with premeditation and deliberation. The evidence further supports a jury finding that the defendant had formulated the intent to rob the victim before or

during the killing of the victim and that the killing and the taking of the property were premeditated and part of a single plan.

9. Any error of the trial court in limiting defense questioning of a prosecution witness concerning the witness' illegal drug use on the evening that the witness allegedly observed the defendant attempting to sell items allegedly taken from the victim's house was harmless beyond a reasonable doubt because the defendant was not precluded from otherwise showing whether the witness' ability to perceive was impaired, the testimony of that witness was cumulative, and the prosecution's case was strong.

10. The trial court's preliminary instructions were proper and did not deny the defendant a fair and impartial trial.

Affirmed.

1. CRIMINAL LAW — UNLAWFUL ARREST — ARREST FOR QUESTIONING — EXCLUSIONARY RULE.

An arrest made for questioning or for investigation is an unlawful arrest for the purpose of the exclusionary rule.

2. CRIMINAL LAW — UNLAWFUL ARREST — CUSTODIAL STATEMENTS — EXCLUSIONARY RULE.

The fact that an arrest was made unlawfully is not dispositive of the question whether a subsequently given custodial statement should have been suppressed as evidence; it is only where the unlawful detention has been used as a tool to procure a custodial statement from a detainee that the statement must be suppressed under the exclusionary rule; intervening circumstances can break the causal chain between an unlawful arrest and a custodial statement so as to render the custodial statement free from the taint of the illegal arrest.

3. CRIMINAL LAW — UNLAWFUL ARREST — CUSTODIAL STATEMENTS — SUBSEQUENT FINDING OF PROBABLE CAUSE.

A custodial statement given by a detainee following an unlawful arrest need not be suppressed as evidence if, before the challenged custodial statement is given, the police have accumulated evidence independent of any taint of the unlawful arrest sufficient to support a finding of probable cause to arrest the defendant.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Mark W. Bernardi,* Assistant Prosecuting Attorney, for the people.

*Robert M. Morgan,* for the defendant.

Before: CORRIGAN, C.J., and MACKENZIE and R. P. GRIFFIN* , JJ.

GRIFFIN, J. Defendant appeals as of right from his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a); MSA 28.548(1)(a), first-degree felony murder, MCL 750.316(1)(b); MSA 28.548(1)(b), and armed robbery, MCL 750.529; MSA 28.797. After the felony-murder count was vacated, defendant was sentenced to life in prison for the first-degree premeditated murder conviction and to twenty to forty years' imprisonment for the armed robbery conviction. We affirm.

On the morning of January 25, 1995, when Monica Hudson went to the home of her sister Joann, she noticed that Joann's green Tempo automobile was gone. Using a spare set of keys, Monica went inside the house. After observing a bloody dish rag in the sink and drops of blood on the floor, she went to the bedroom where she found the mutilated body of her murdered sister. Telephone lines to the house had been cut, and Monica observed that the radio, the compact disc (CD) and tape player, and some CDs were missing. Some time after 10:00 P.M. on that same day, defendant was arrested by the police. Following fingerprinting and processing, defendant was placed in an interrogation room, where he was held for more than fifteen hours.

While in custody, defendant made and signed two statements, one at 2:45 A.M. on January 26 and the sec-

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

ond at 3:20 P.M. on the same day. In his first statement, defendant told police that he spent time with Joann Hudson, his former girlfriend, on the day she was murdered, but he denied killing her. In his second statement, defendant admitted killing Joann Hudson.

I

Defendant first argues that the trial court clearly erred in refusing to suppress evidence of his two custodial statements on the basis that they were secured in violation of the Fourth Amendment of the United States Constitution. The trial court held a suppression hearing, where defendant unsuccessfully argued that his statements were involuntary and the result of an illegal arrest. Now, on appeal, he abandons his claim that the statements were involuntary and argues only that the statements were the product of an illegal arrest. Defendant contends that his arrest without a warrant in his father's home was unconstitutional because the police did not have probable cause to arrest him.

A police officer may arrest an individual without a warrant if a felony has been committed and the officer has probable cause to believe that the individual committed the felony. MCL 764.15(c); MSA 28.874(c); *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). In reviewing a challenged finding of probable cause, an appellate court must determine whether the facts available to the arresting officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected individual had committed the felony. *People v Oliver*, 417 Mich 366, 374; 338 NW2d 167 (1983); *Peo-*

*ple v Russo*, 439 Mich 584, 603-604; 487 NW2d 698 (1992); *People v Sloan*, 450 Mich 160, 168; 538 NW2d 380 (1995).

Insofar as the record reveals, the officer who actually made the arrest, Robert Carroll, possessed no information that connected defendant to the crime. It is clear that Carroll acted in response to an order given by Officer Dale Collins to bring the defendant "downtown for questioning in regards to a homicide." Testifying at the suppression hearing, Collins acknowledged that his report concerning the arrest would reflect "arrest for questioning in [sic] regarding a murder."

At defendant's trial, Collins testified that he ordered defendant arrested because he wanted "to find out if he knew anything about the death of Miss Hudson." At one point, the judge intervened and inquired concerning the basis for defendant's arrest:

> *Court*: What was that?
>
> *Witness* [Collins]: That he was a boyfriend. That according to her girlfriend, they had some problems and he had, there was another, his brother or cousin by the name of Gist, I believe his name was, there was some problems there and I felt I had reason to question him, if nothing else.

Collins also admitted in his testimony that at the time of the arrest defendant "was not the main suspect. He was a person to look at, but he was not the main suspect."

During his investigation before the arrest, Collins learned that the victim had recently been involved with two men: the defendant and a person named Ellis, who may have been a brother or cousin of the defendant. In addition, Collins interviewed a neighbor

who said that on the day before the killing she had observed the victim arguing with a man who drove a Mercedes Benz automobile. There was no reason to believe that defendant owned or drove a Mercedes Benz.

Before the arrest, Collins took a statement from Lisa Johnson, a friend of the victim. Johnson told Collins that she had a telephone conversation with the victim at about 9:25 P.M. on January 24, 1995. The conversation was interrupted twice by call-waiting beeps, and the victim talked to the person who beeped in. When she returned to talking to Johnson, the victim said that she was going to pick up her belated birthday present, and that "he wasn't going to leave her alone until she picked it up." Johnson indicated to Collins that she did not know to whom the victim was referring. Collins also learned before the arrest that the victim had recently broken off her relationship with the defendant and that he had made overtures to restore it.

While the facts known by Officer Collins before the arrest justified his consideration of the defendant as a suspect, we cannot find that they constituted probable cause to arrest him as the killer. Although an officer's characterization of an arrest is not determinative of its legality, *People v Cipriano*, 431 Mich 315, 342; 429 NW2d 781 (1988), we are persuaded in this instance that Collins, a seasoned officer, aptly described the action he ordered as an arrest for questioning, an illegal police practice long condemned by the United States Supreme Court and the appellate courts of this state.

In *Brown v Illinois*, 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975), officers testified that they arrested

the defendant for the purpose of questioning him as part of their investigation of a murder. The United States Supreme Court condemned the conduct, noting that the officers "virtually conceded" the impropriety of the arrest "when they repeatedly acknowledged, in their testimony, that the purpose of their action was 'for investigation' or for 'questioning.' " *Id.* at 605. Citing *Brown*, this Court noted its "emphatic disapproval" of similar police conduct in *People v Washington*, 99 Mich App 330, 335; 297 NW2d 915 (1980). We reiterate that condemnation and find that the trial court erred in ruling that the arrest in this case was proper.

However, our conclusion regarding the legality of the arrest is not dispositive in this case. The mere fact of an illegal arrest "does not per se require the suppression of a subsequent confession." *Id.* at 334. It is only when an "unlawful detention has been employed as a tool to directly procure *any* type of evidence from a detainee" that the evidence is suppressed under the exclusionary rule. *People v Mallory*, 421 Mich 229, 240-241, 243, n 8; 365 NW2d 673 (1984). Intervening circumstances can break the causal chain between the unlawful arrest and inculpatory statements, rendering the confession " 'sufficiently an act of free will to purge the primary taint' " of the unlawful arrest. *Brown, supra* at 602, quoting *Wong Sun v United States*, 371 US 471, 486; 83 S Ct 407; 9 L Ed 2d 441 (1963).

In *Washington, supra*, the defendant was arrested without probable cause. After his arrest, the defendant's sister told the police that the defendant had admitted complicity in the crime. When the defendant was confronted with his sister's statement, he con-

fessed. This Court held that "the primary taint of the unlawful arrest was sufficiently attenuated by the subsequent evidence establishing probable cause so that the defendant's confession is properly admissible." *Id.* at 336. Similarly, in *People v Hampton*, 138 Mich App 235; 361 NW2d 3 (1984), the defendant was arrested without probable cause and made an exculpatory statement. Several hours later, the police told the defendant of new evidence that had been uncovered, and they asked the defendant if he wished to change his statement. He initially declined, but eventually implicated himself in the crime approximately eight hours after his first statement. This Court determined that the later statement was "not the result of the exploitation of the earlier arrest of defendant without probable cause." *Id.* at 238.

Other courts have held that a custodial confession following an illegal arrest need not be suppressed if the police have uncovered evidence sufficient to establish probable cause to arrest the defendant before the challenged custodial statement was given. Under such circumstances, " 'one could question the wisdom of requiring police to go through the formality of releasing [the defendant], only to rearrest him outside the jailhouse door.' " *People v Pierson*, 166 Ill App 3d 558, 564; 519 NE2d 1185 (1988), quoting *People v Lekas*, 155 Ill 3d 391, 414; 508 NE2d 221 (1987). See also *United States v Manuel*, 706 F2d 908, 911 (CA 9, 1983) (even if the defendant's arrest was illegal, the police accumulated "more than enough evidence" to establish probable cause, including the statements of two separate eyewitnesses, before he confessed), and *United States v Maier*, 720 F2d 978, 980 (CA 8, 1983) (the defendant's statements "were

obtained not by improper exploitation of the illegal arrest, but only after intervening events had given police probable cause to arrest" him).[1]

In the present case, after defendant was arrested but before he made the second statement, police found the victim's green Tempo automobile and questioned its four occupants. The driver told police that defendant had loaned the vehicle to him on the day following the murder. Also in the interval between defendant's arrest and his second statement, the police conducted a consensual search of the home of defendant's father, during which they discovered bloodstained papers bearing defendant's name and retrieved a freshly washed wet jacket from which a button was missing. The remaining buttons on the jacket matched a button found near the victim's body. This evidence, coupled with evidence already possessed by the police, was more than adequate to establish probable cause to arrest defendant. As in *Washington, supra,* and *Hampton, supra,* the new evidence with which defendant was confronted before he made the inculpatory statement was a suffi-

---

[1] For state court opinions, see also *State v Barry,* 86 NJ 80; 429 A2d 581 (1981) (intervening events, including the confessions of other participants in the crime and recovery of the guns used, severed the causal link between the defendant's arrest without probable cause and his custodial confession); *People v Lekas, supra* (the confrontation of a detainee with new evidence or another's confession is a sufficient intervening event to purge the taint of an allegedly unlawful arrest.); *People v Paden,* 158 AD2d 554; 551 NYS2d 325 (1990) (the defendant's arrest arguably was not supported by probable cause, but the police obtained additional information after his arrest and before he was questioned that independently supported a finding of probable cause to arrest; the defendant's statements are therefore admissible); *Collins v State,* 707 So 2d 821 (Fla, 1998) (even if the defendant's arrest was not supported by probable cause, the confession of the defendant's accomplice also implicating defendant was an intervening circumstance that established probable cause before the defendant confessed).

cient intervening circumstance to sever any causal connection between defendant's arrest and his subsequent confession. Therefore, there was no error in admitting defendant's second statement at his trial.

We assume, without deciding, that defendant's first statement was the product of an illegal arrest and that by admitting it into evidence the trial court committed an error of constitutional dimension. Nonetheless, because the error "occurred during the presentation of the case to the jury, . . . [the statement] may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v Fulminante*, 499 US 279, 307-308; 111 S Ct 1246; 113 L Ed 2d 302 (1991); *People v Solomon (Amended Opinion)*, 220 Mich App 527, 536; 560 NW2d 651 (1996). Because defendant admitted killing the victim in his second statement, which was properly admitted at trial, and in light of the other evidence produced against defendant, we conclude after a review of the entire record that the error in admitting defendant's first statement was harmless beyond a reasonable doubt. See *Chapman v California*, 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), and *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998).

II

Next, defendant contends that he was denied a fair and impartial trial as a result of several instances of alleged prosecutorial misconduct. Claims of prosecutorial misconduct are reviewed case by case. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). After reviewing the record, we con-

clude that defendant was not denied a fair and impartial trial. See *People v Bahoda,* 448 Mich 261, 266-267; 531 NW2d 659 (1995).

Within his first custodial statement, wherein defendant denied killing the victim, he gave an elaborate explanation of his whereabouts on the day of the murder. This seven-page statement, which was read into the record by Officer Collins, included a one-sentence reference by defendant to a visit that day with his probation officer. There was no mention in the statement concerning why defendant visited with the officer, and the prosecutor made no reference to the matter at any point thereafter during the trial. Defendant now contends that the prosecutor deliberately sought to inform the jury that defendant had prior criminal convictions. Although defendant had earlier objected to admission of the whole statement as the product of an illegal arrest, he did not object on the specific ground now being asserted, see MRE 103(a)(1), nor did he request a curative instruction. Appellate review is precluded unless a curative instruction could not have eliminated possible prejudice or the failure to consider the issue would result in a miscarriage of justice. *People v Stanaway,* 446 Mich 643, 687; 521 NW2d 557 (1994). Under the circumstances, we find that this passing reference within defendant's explanation of his whereabouts on the day of the murder did not result in a miscarriage of justice.

Defendant next challenges prosecutorial conduct that brought to the jury's attention several blood-stained papers found during a search of his father's home. During the prosecutor's examination of Officer Harold Mitchell, the witness stated, "Here's a piece of

paper that says Albert Kelly. It's special conditions on parole from . . . ." Officer Mitchell never completed his sentence, and the piece of paper was not admitted into evidence. Defendant contends that reference to his parole status denied him a fair and impartial trial. We disagree. Defendant failed to object to the officer's statement and did not ask for a limiting instruction. The bloodstained papers were not offered to show that defendant had previously been convicted of a crime but to establish his presence at the crime scene. The prosecutor did not mention defendant's parole status during her closing argument. We conclude that no miscarriage of justice resulted from the witness' casual mention of defendant's parole status. See *Stanaway, supra* at 687.

Defendant also challenges conduct by the prosecution that occurred during the examination of Officer Patrick Henahan. When asked by the prosecutor if he collected any other pieces of evidence from the home of defendant's father, the officer's response included a reference to Polaroid photographs depicting a nude black female. Although the photographs were irrelevant and should not have been mentioned, we note that they were not offered or admitted as evidence and were not shown to the jury. In addition, no further inquiry was made regarding the photographs, and the prosecution never referred to the photographs again. We find that the witness' reference to the photographs did not deny defendant a fair and impartial trial.

Next, defendant challenges as misconduct questions posed to a prosecution witness who testified that he was approached by two men offering to sell him some items allegedly taken from the victim's

home. When asked if he saw either of the two men in court, the witness responded, "No. I don't know." The prosecutor asked the witness if he was afraid to come to court, and the witness testified that he was "a little bit afraid." On two other occasions, the prosecutor asked the witness if he was afraid of identifying either of the two persons that he had encountered. When this question was posed for the third time, the court sustained defendant's objection that the question had been asked and answered. Defendant now argues that the prosecutor attempted to prejudice defendant by unfairly insinuating that he was either dangerous or had threatened a witness.

Evidence of a defendant's threat against a witness is generally admissible as conduct that can demonstrate consciousness of guilt. *People v Sholl,* 453 Mich 730, 740; 556 NW2d 851 (1996). In this case, no direct evidence was offered or admitted. However, in view of the witness' statement that he was a little afraid to come to court, we believe it was appropriate for the prosecutor to question the witness in this matter in an attempt to elicit testimony that might explain his inability to identify defendant. When it was clear that the witness was not going to identify defendant, the court sustained defendant's objection. Under the circumstances, we find that the prosecutor's questioning did not constitute misconduct.

Defendant also registers a general complaint that the prosecutor repeatedly propounded questions that called for hearsay answers and cites two instances in the record where this allegedly occurred. Defendant has not properly presented this issue for appellate review. An appellant may not merely announce his position and leave it to this Court to discover and

rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority. *Goolsby v Detroit*, 419 Mich 651, 655, n 1; 358 NW2d 856 (1984).

Finally, defendant complains about comments made by the prosecutor during closing arguments. After describing the various assaults on the victim, the prosecutor commented: "I have never seen such a case of overkill, literally and figuratively in this case. The defendant, Albert Kelley [sic], Jr. wanted to make sure that Joann Hudson was good and dead." The prosecutor also commented that the uncooperative witness was afraid to look at the defendant and testify. Defendant contends that these comments amounted to unsworn personal testimony by the prosecuting attorney. We disagree. Reading the comments in context, we conclude that the prosecutor was simply arguing the evidence and drawing reasonable inferences arising from the testimony, which is allowed during closing arguments. *Bahoda, supra* at 282.

III

Next, defendant argues that there was insufficient evidence to support his convictions of first-degree premeditated murder, first-degree felony murder, and armed robbery. When reviewing a challenge to the sufficiency of the evidence, appellate courts examine the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 516; 489 NW2d 748 (1992).

Defendant contends that there was no evidence presented concerning the element of premeditation to support his conviction of first-degree premeditated murder. We disagree. In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993), citing *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992).

In the present case, a finding of premeditation was supported by the circumstances surrounding the killing. The victim was stabbed and suffered blunt force injury to her head, and the killer had attempted manual strangulation. In between each method of assault, the killer had the opportunity to reflect upon his actions. Both telephone cords in the house were cut, suggesting that the killer had anticipated the possibility that the victim might call for help. Defendant took the victim's automobile and items from her home and attempted to sell the stolen items during the remainder of the evening following the killing and the next day. From these methodical actions, the jury could reasonably infer that the killer had an opportunity to take a "second look" before killing the victim.

We also find that the evidence was sufficient to support defendant's conviction of felony murder. The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great

bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316;   MSA 28.548. *People v Turner*, 213 Mich App 558, 566; 540 NW2d 728 (1995). It is not necessary that the murder be contemporaneous with the enumerated felony. *People v Brannon*, 194 Mich App 121, 125; 486 NW2d 83 (1992). The statute requires only that the defendant intended to commit the underlying felony at the time the homicide occurred. *Id.*

In this case, defendant contends that the intent to steal was not formed until after the homicide and, therefore, there was insufficient evidence to support a conviction of felony murder. We disagree. Shortly after the killing, defendant approached potential buyers for the stolen property. Moreover, defendant did not have his own transportation and needed the victim's automobile to escape from the crime scene. A reasonable jury could conclude that defendant formulated the intent to steal the victim's property before or at the time of the actual killing.

Defendant also contends that insufficient evidence was presented to support a conviction of armed robbery because there was no nexus between the killing (the assault) and the taking of property. We disagree. There was sufficient evidence from which the jury could conclude that the killing and the taking of property were premeditated and part of a single plan.

In addition, defendant cites *People v Vail*, 393 Mich 460; 227 NW2d 535 (1975), as support for his argument that he suffered unfair prejudice because the

jury was allowed to consider the felony-murder charge. The holding on which defendant relies in *Vail* was overruled by the Michigan Supreme Court in *People v Graves*, 458 Mich 476; 581 NW2d 229 (1998). Moreover, in the present case, unlike *Vail*, the jury convicted defendant of the charged counts, and the evidence supported these convictions. Defendant suffered no unfair prejudice.

IV

Defendant next contends that he was denied the right of confrontation as guaranteed by the Sixth Amendment of the United States Constitution and by Const 1963, art 1, § 20. We disagree.

One of the prosecution's witnesses was a doorman at a crackhouse. During cross-examination, defendant's counsel was precluded from asking the witness if he was under the influence of crack on the evening that he allegedly observed defendant attempting to sell certain items at the crackhouse. When explaining its ruling, the trial court stated that because the witness was under subpoena, he could not be compelled to give incriminating testimony.

A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation. *People v Cunningham*, 215 Mich App 652, 657; 546 NW2d 715 (1996). However, violations of the right to adequate cross-examination are subject to a harmless-error analysis. *People v Bushard*, 444 Mich 384, 391-392, n 7; 508 NW2d 745 (1993), citing *Chapman, supra* at 24. Whether such an error is harmless in a particular

case depends on a host of factors, including the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *People v LaLone*, 432 Mich 103, 132; 437 NW2d 611 (1989), citing *Delaware v Van Arsdall*, 475 US 673, 684; 106 S Ct 1431; 89 L Ed 2d 674 (1986).

In the present case, the trial court's ruling did not preclude defendant from determining through further questioning whether the witness' ability to perceive was impaired. See, e.g., *People v Berry*, 36 Mich App 1, 7; 193 NW2d 401 (1971). Moreover, the witness' testimony was cumulative, because two other witnesses testified regarding defendant's attempts to sell CDs and electronic equipment on the day following the murder. Furthermore, the prosecutor's case was strong and included defendant's confession to the killing. If the court committed any error in denying defendant full cross-examination of the witness, the error was harmless beyond a reasonable doubt.

V

Next, defendant claims that the trial court's instructions to the jury at the beginning of the trial deprived him of a fair trial, because the instructions failed to inform the jury that it could find reasonable doubt on the basis of the lack of evidence or the unsatisfactory nature of the evidence presented at trial. Our review reveals no error in the court's preliminary instructions. Moreover, defendant did not object to the preliminary instructions and thus has failed to preserve this claim for appellate review. *People v Kennebrew*,

220 Mich App 601, 608; 560 NW2d 354 (1996). Absent a showing of manifest injustice, instructional error will not be considered on appeal unless the issue has been preserved by an objection in the trial court. *People v Van Dorsten*, 441 Mich 540, 544-545; 494 NW2d 737 (1993), citing *People v Kelly*, 423 Mich 261, 271-272; 378 NW2d 365 (1985). Because we find no error and no manifest injustice, this Court will not further review this issue.

VI

Finally, defendant argues that he was denied a fair trial because of the cumulative effect of errors by the trial court. We have found no errors requiring reversal. Defendant is entitled only to a fair trial, not a perfect trial. He received a fair trial. See *Van Arsdall, supra* at 681; *Bahoda, supra* at 292, n 64.

Affirmed.