*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATALIE CHRISTINA NELSON,

        Defendant-Appellant.

UNPUBLISHED
August 31, 2023

No. 360860
Wayne Circuit Court
LC No. 19-008280-01-FH

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

HOOD, J. (*dissenting*.)

I respectfully dissent. I agree with almost all of the majority opinion, including the majority's conclusion that the trial court committed an obvious evidentiary error. I, however, disagree with the majority's conclusion that it was harmless error for the trial court to erroneously exclude the victim, Arron Lewis's, statement, "I will kill you." I would reverse for two reasons: (1) even under the test for preserved, nonconstitutional errors, this appears to be outcome determinative; and (2) this exclusion borders on a constitutional error implicating defendant Natalie Christina Nelson's right to present a defense.

## I. BACKGROUND

The proposed opinion accurately describes the facts including those relevant to this issue. Critically, prior to the alleged assault, Nelson confronted Lewis about his contact with his cousin, a child molester, who had sex with Lewis's sister when she was a minor. They began to argue. During the argument, Nelson grabbed at his neck, scratched him, attempted to hit him, and threw an ashtray at him. These facts are not largely disputed.

Nelson and Lewis provided different accounts of what happened next. Lewis denied choking Nelson before Nelson grabbed her gun, but both Nelson and her son testified that Lewis choked her and that he demonstrated what he had done to her stating, "I just did this to her," and gesturing. The son also testified that they had physical fights in the past where Lewis choked Nelson. According to trial testimony, Lewis is six feet tall and 175 pounds. Nelson's height and weight are not part of the record, but according to her testimony, she is short enough that the bed

in the room where this incident happened comes up to her stomach. In short, and as the defense emphasized in closing, Lewis is substantially bigger than Nelson.

According to Nelson, Lewis jumped on top of her and started to choke her to the point that she could not breath. During her direct examination, defense counsel tried to capture the sequence of this conduct in relation to Lewis's statement to Nelson, "I will kill you," but the trial court prevented counsel from doing so. The evidentiary error described in the majority opinion occurred in the middle of the sequence of questions about Lewis choking Nelson.

The trial court's ruling precluded the defense from admitting evidence that Lewis said, "I will kill you," before he choked Nelson, and before Nelson puller her gun. The trial court never corrected this error.

As the majority observes, the statement came out during Nelson's cross-examination, but it did not come out in response to a question. The previously excluded statement came out in a non-responsive answer to the prosecutor's question:

> Q. So when you came in the house you immediately asked to see Mr. Lewis's telephone?
>
> A. No. I seen his name in the phone. And I asked him. I said, "Did Jay call you?" And that's when he jumped on top of me and started to choke me. And he was saying, "Don't ever ask me about my f*cking cousin ever again. I will kill you."
>
> Q. I'm glad you shared all of that. But my question is you came in the house and saw the phone. Is that what you are telling us, you saw the phone?

What followed was a back-and-forth between the prosecution and defense about whether the answer was responsive. It is unclear whether the prosecution purposefully did not move to strike, so as not to emphasize Nelson's testimony, and shrewdly deflected to other issues with her answer. But because that part of her answer was nonresponsive, the prosecution likely did not open the door for the defense to explore the statement on redirect. The defense did not move for the court to reconsider. And it did not argue that the prosecution opened the door.

This is significant because the statement was potentially part of the body of evidence that the jury could consider, but it only came out in a nonresponsive answer that was the subject of a previously upheld objection. This is different, and likely less credible, than naturally and measuredly providing that statement in response to defense counsel's nonleading, but very precise and sequential questions.

It also means that the defense could not argue about the statement in closing, because the error was never corrected. Here, where the defense theory was self-defense, the trial court prevented the defense from introducing evidence that the victim said, "I will kill you," during or immediately before choking the defendant, and prevented the defense from arguing about it in closing argument. Neither the defense, nor the prosecution, referenced the statement during closing.

I otherwise agree with the majority's summary of the factual background.

## II.  LAW AND ANALYSIS

Regarding the trial court's erroneous decision to exclude this statement as hearsay, I agree that this was an error and that the error was preserved.  The question is whether it was harmless.  It was not.

A preserved error related to the exclusion of evidence "does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (addressing preserved errors for the improper admission of hearsay) (quotation marks, footnote, and citation omitted).  "[T]he appropriate inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (quotation marks and citation omitted).  The burden is on the defendant to prove the error "resulted in a miscarriage of justice . . . ." *Id*.

Here, Nelson attempted to introduce evidence that the much larger victim got on top of her, choked her, and said "I will kill you," before she pulled out her gun.  The trial court prevented the defense from introducing this, and based on its ruling, prevented the defense from arguing about it in closing.  It only came into the body of evidence through Nelson's self-serving nonresponsive answer to the prosecution's question on cross-examination.  The trial court's ruling defanged the defense.  It took away defense counsel's ability to use the hallmark trial tactics of primacy and recency to its advantage.  To the extent that the evidence came in anyway, it was in a nonresponsive answer that was largely buried by objections and questions about other matters.  This necessarily affects the weight and strength of the evidence supporting the self-defense theory.  This makes it more likely than not that the error was outcome determinative.

I disagree with the majority's reliance on *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008), to conclude that once the statement came in through Nelson's nonresponsive answer on cross examination, it was in the body of evidence, and the jury could consider it.  In *Unger*, this Court held juries are presumed to follow the court's instructions.  *Id*.  There, the defendant argued that the court should reverse his conviction because, during closing argument, the prosecutor denigrated defense counsel's integrity, accused the defense expert of lying, and argued facts not in evidence.  *Id*. at 234.  This Court agreed that some of the statements were improper, but found that the trial court's curative instruction was sufficient, "and jurors are presumed to follow their instructions." *Id*. at 234-235.

Here, however, there was no curative instruction, and the transcript does not indicate that the trial court provided the jury with clarity on whether it could consider Lewis's statement, "I will kill you."  On direct, when Nelson first began to testify to Lewis's statement, the prosecution objected on the basis of hearsay.  The trial court ultimately ruled: "I will sustain that.  We're not going to get into what he said in response.  You had a discussion about this, correct? . . .  Let's move on . . . ."  Later, during the final jury instructions, the court provided the pattern instructions on considering evidence and not considering matters that were not evidence.  But these instructions do not provide clarity on how a juror should consider previously excluded evidence that then was introduced in a nonresponsive error.  See Mich Crim JI 3.5.  Quoting Mich Crim JI 3.5(8), the trial

court instructed the jury to consider "all the evidence regardless of which party presented it." But in the preceding breath, quoting Mich Crim JI 3.5(7), the trial court also instructed, "At times during the trial I may have excluded evidence that was offered or stricken testimony that was heard, please do not consider those things in deciding the case, make your decision only on the evidence that I let in and nothing else." Here, the trial court did not let in the statement, "I will kill you." On the contrary, it explicitly excluded it. Nelson offered the evidence anyway in a nonresponsive answer. Although the trial court appears to have largely adhered to the pattern jury instructions, at best these instructions are unclear on how to handle testimony that was previously excluded, that came in even when it was not introduced, and was not the subject of a motion to strike or a motion to reconsider. Far from giving the jury clear guidance to consider this testimony as part of "all the evidence," relying on the court's prior order to exclude the testimony and its instruction not to consider excluded testimony, it is very possible that the jury did not consider this evidence at all.

Finally, in this case, where the central issue was whether Nelson pulled the firearm in self-defense, the error was so extreme that it implicated Nelson's right to present a defense. A criminal defendant has a constitutional right to present a defense. See US Const, Am VI; Const 1963, art 1 § 20; *People v Masi*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 358922); slip op at 10. A defendant is merely required to comply with the procedural and evidentiary rules established to assure fairness and reliability in the verdict. See *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982). In related contexts, when considering whether an evidentiary error affecting constitutional rights is harmless, we have required consideration of a variety of factors including, among others, the importance of the testimony, whether other evidence corroborated the testimony, and the overall strength of the prosecution's case. See *People v Kelly*, 231 Mich App 627, 644-645; 588 NW2d 480 (1998).

Here, the statement came in but in a manner that was of little or no use to the defense. Nelson's counsel was still barred from arguing about the statement in closing. Since it only came into evidence through Nelson's self-serving, non-responsive answer to the prosecutor's question on cross-examination, it very likely affected the jury's perception of her credibility.[1] Without this evidence, the prosecution's case became much stronger.

To date, I have struggled to find cases involving the same sort of error at issue here. Most of our cases on this issue involve an abuse of discretion by trial judges limiting the scope of the defense's cross-examination or erroneously admitting inadmissible hearsay in the prosecution's case. I have yet to find a case involving a trial judge precluding a defendant, who is arguing self-defense, from admitting evidence that the complaining witness said "I will kill you" before strangling her. Despite the dearth of comparable cases, I conclude that the error was not harmless.

III. CONCLUSION

---

[1] The trial court not only informed the jury to consider all evidence, but it also provided the pattern instruction on assessing witness credibility. See M Crim JI 2.8; M Crim JI 3.6. This included considerations of whether the witness made an honest effort to tell the truth or evaded questions of the lawyers and argue with the lawyers. See M Crim JI 2.8; M Crim JI 3.6.

For the reasons stated above, I respectfully dissent. I would vacate the conviction and remand this case to the trial court for a new trial with explicit guidance that Lewis's alleged statement, "I will kill you," is admissible.


/s/ Noah P. Hood