*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ROBERTO MARCELLO DUPREE,

       Defendant-Appellant.

UNPUBLISHED
June 09, 2025
3:35 PM

No.   369737
Macomb Circuit Court
LC No.  2015-003884-FC

Before:  MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant, Roberto Dupree, appeals as of right his conviction of armed robbery, MCL 750.529.  Following a remand from our Supreme Court,[1] Dupree was resentenced as a fourth-offense habitual offender, MCL 769.12, to 25 years to 450 months' imprisonment.  For the reasons stated in this opinion, we affirm.

## I.  BASIC FACTS

Dupree and two others robbed a store in 2012.  During the robbery, a store clerk was held at gunpoint, restrained with duct tape and taken into a back room, and struck with a gun.  One of Dupree's confederates was the individual armed with a gun.  Dupree was the only one to be arrested or charged.  He was convicted following a jury trial, and appealed as of right to this Court. This Court upheld his conviction and sentence, but our Supreme Court reversed Dupree's sentence and remanded to the trial court for resentencing.  *People v Dupree*, 511 Mich 1, 4; 993 NW2d 185 (2023).  This appeal of Dupree's sentence follows.

---

[1] *People v Dupree*, 511 Mich 1; 993 NW2d 185 (2023).

## II. CONSTITUTIONALITY OF 25-YEAR MANDATORY MINIMUM SENTENCE

### A. STANDARD OF REVIEW

Dupree argues that the 25-year mandatory minimum sentence required under MCL 769.12 is unconstitutional as applied to him because it constitutes cruel and/or unusual punishment. "To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Dupree did not raise this constitutional challenge in the trial court, so the issue is unpreserved. See *id*. Our review of this issue, therefore, is for plain error affecting Dupree's substantial rights. See *id*. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id*. Substantial rights are affected when the error "impacts the outcome of the lower-court proceedings." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Dupree does not dispute that, under MCL 769.12, the trial court was required to sentence him to a term of imprisonment "for not less than 25 years." See MCL 769.12(1)(a). Instead, he contends that such a sentence, as applied to him, constitutes cruel and unusual punishment under the United States Constitution and cruel or unusual punishment under the Michigan Constitution. See US Const, Am VIII and Const 1963, art 1, § 16. "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted). Grossly disproportionate sentences constitute cruel or unusual punishment under the Michigan Constitution. *Id*. Whether a punishment is cruel or unusual depends upon "(1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Burkett*, 337 Mich App at 636-637 (quotation marks and citation omitted). In general, "habitual-offender statutes are constitutional and the sentences under them are not cruel or unusual, because the state has a right to protect itself from individuals who continue to engage in criminal activities." *Id*. at 637 (quotation marks and citation omitted).

"A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). Dupree argues that MCL 769.12(1)(a) is unconstitutional as applied to him. An as-applied challenge to the constitutionality of a statute "considers the specific application of a facially valid law to individual facts." *Id*. (quotation marks and citation omitted). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Burkett*, 337 Mich App at 637 (quotation marks and citation omitted). "Legislatively mandated sentences are presumptively proportional and presumptively valid." *Id*. (quotation marks and citation omitted). A defendant may overcome that presumption by presenting "unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted).

Here, Dupree argues that his sentence was disproportionate because (1) his sentencing guidelines range was 126 to 420 months, but the trial court was required to sentence him to a

minimum of 25 years; (2) he only had one conviction between 1992 and the instant offense (which occurred in 2012); (3) the trial court lacked discretion to "craft a sentence that was proportionate to the offense and Mr. Dupree as the offender;" and (4) because he is 58 years old he will not be eligible for parole until he is 74 years old. Other than stating the existence of these circumstance, Dupree does not explain how they are "unusual." As a result, he has failed to overcome the presumption of proportionality. *Id*.

Moreover, the 25-year mandatory minimum sentence is not unduly harsh under the circumstances surrounding Dupree and the offense that he perpetrated. It is Dupree's significant and lengthy criminal history that deprived the court of the discretion to consider a lesser sentence minimum. That history includes eight prior felonies, some of them assaultive in nature. Although Dupree was only convicted of one felony in the 20 year period between 1992 and 2012, the record reflects that Dupree was incarcerated for approximately 17 of those 20 years, which limited his ability to commit additional crimes during that period. Additionally, as noted above, Dupree and two others committed an armed robbery at a store. The store's clerk was held at gunpoint by Dupree's confederate, was restrained with duct tape, taken to a back room, and struck with a gun. The severity of the crime is not lessened by the fact that Dupree will not be eligible for parole until he is 74 years of age. And it is not unusual that a defendant with a lengthy criminal history who commits a serious crime in his or her mid-40s will be more likely to be of an advanced age by the time he or she is eligible for parole. It is simple logic. Next, although the trial court lacked discretion to impose a lesser minimum sentence, it retained the discretion to impose a lengthier minimum sentence. It chose not to do so in this case after considering that Dupree was a "model prisoner" and had taken advantage of rehabilitation classes. Indeed, the court opined that Dupree was "deserving" of "the minimum and nothing greater than that." Thus, although Dupree suggests that his case was unusual because the trial court's discretion was restrained, the record reflects that the court retained some discretion and, given the circumstances surrounding the offender, i.e., Dupree, it exercised that discretion in Dupree's favor.

For the foregoing reasons, Dupree has not satisfied his burden of showing that his sentence constituted cruel and unusual punishment or cruel or unusual punishment in violation of the federal or state constitutions.

## III. DE FACTO LIFE SENTENCE

## A. STANDARD OF REVIEW

Dupree next argues that his sentence constituted a de facto life sentence that are disproportionate to him and his offense. Sentencing decisions must be "based on the principle of proportionality." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). This requires " 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). "[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Posey*, 512 Mich at 352. "A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant." *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019).

## B. ANALYSIS

There is a nonbinding presumption that sentences within the sentencing guidelines range are proportional. *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821), slip op at 5. The burden is on the defendant to demonstrate that his or her "within-guidelines sentence is unreasonable or disproportionate." *Id*. (quotation marks and citation omitted). Appropriate sentences should consider "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). In *Purdle (On Remand)*, this Court explained that:

> With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. *Steanhouse*, 500 Mich at 472. The key test is whether the sentence is proportionate to the seriousness of the matter. *Id*. In regard to proportionality, the *Milbourn* Court "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). [*Purdle (On Remand)*, ___ Mich App at ___; slip op at 5, quoting *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 345491); slip op at 2-3.]

On appeal, Dupree contends that his sentence does not properly consider the sentencing goals of deterrence to others from committing the same offense. He suggests that there is no functional distinction between a 12-year sentence and a 25-year year sentence on deterrence and that the length of a sentence has little impact on an individual's decision to commit a crime. The deterrence sentencing consideration, however, considers the deterrence effect on others, not on the individual being sentenced. Furthermore, Dupree provides a cursory citation to an article by the Council on Criminal Justice: Task Force on Long Sentences as support for his position.[2] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Moreover, our review of the article cited cautions that "researches have not rigorously investigated whether different outcomes might result from a 10-year prison sentence when compared to a 15-, 20-, or 30-year sentence." Thus, the article does not support Dupree's assertion that there is no functional distinction between a 12-year sentence and a 25-year year sentence on deterrence. Rather, it indicates that the issue has not been well researched.

---

[2] Council on Criminal Justice: Task Force on Long Sentences, *The Impact of Long Sentences on Public Safety: A Complex Relationship*, November 2022, <https://counciloncj.org/wp-content/uploads/2024/05/Impact-of-Long-Sentences-on-Public-Safety.pdf> (accessed May 8, 2025).

Dupree next maintains that the length of his sentence will do little to protect society because there is "good evidence" that individuals "age out" of committing crimes as they get older. In support, he cites an article by the National Institute of Justice.[3] The article, however, states that the so-called age-crime curve shows, generally, individuals are less likely to commit criminal offenses as they get older. More specifically, the article suggests that the largest decline occurs between an individual's teenage years and their late twenties. Dupree, however, was in his mid-40s when he committed the instant offense. He was first convicted of a criminal offense when he was in his twenties. In the decades that followed, he continued to commit and be convicted of crimes. During that period, he violated probation on multiple occasions, was paroled both successfully and unsuccessfully, and served lengthy periods of incarceration. At the time that he committed the instant offense, he was on parole. In light of these individual circumstances related to Dupree, the record shows that he is an individual who has continued to commit crimes past late adolescence and well into his adult years. Moreover, it is also worth noting that one article cited by Dupree suggests that incapacitating chronic violent offenders by incarcerating them does, in fact, result in a reduction in violent crime.[4] Given that Dupree is a demonstrated man of violence and a chronic offender, the article suggests that the sentencing consideration of protection of society is actually better served by a longer period of incarceration.

Dupree contends that the length of his sentence will deny him an opportunity to reveal his rehabilitation to the parole board. Yet, the record reflects that he has had multiple opportunities to demonstrate that he had been rehabilitated while in prison. And, despite being paroled on multiple occasion, Dupree has continued to commit crimes. Indeed, he was on parole when he committed the offense at issue in this case. Regardless, the fact that he will not be before the parole board until he is 74 years of age does not deny him an opportunity to show rehabilitative potential.

Dupree next argues that, given his age, the sentence imposed is a "de facto" life sentence or "a death in prison sentence without the possibility of parole." He notes, again, that he will be 74 years old when he is first eligible for parole. He maintains that "[s]tatistics" show that he is unlikely to live long enough to be considered for parole. He does not direct this Court to any statistical tables in support of his position. As such, he has abandoned that portion of his argument on appeal. See *Kelly*, 231 Mich App at 640-641.

Regardless, even if this Court were to conclude that Dupree is statistically likely to die prior to being eligible for parole, that fact would not render his sentence disproportionate. Dupree was not given a death sentence, nor was he sentenced to life in prison. Instead, he was given a

---

[3] National Institute of Justice, "From Youth Justice Involvement to Young Adult Offending" <https://nij.ojp.gov/topics/articles/youth-justice-involvement-young-adult-offending#:~:text=Scholars%20and%20laypeople%20alike%20debate,fully%20mature%20at%20that%20age.> (accessed May 8, 2025).

[4] See Council on Criminal Justice: Task Force on Long Sentences, *The Impact of Long Sentences on Public Safety: A Complex Relationship*, November 2022, <https://counciloncj.org/wp-content/uploads/2024/05/Impact-of-Long-Sentences-on-Public-Safety.pdf> (accessed May 8, 2025).

term of years sentence. The length of his sentence is a product of the circumstances surrounding both the offense and Dupree as an offender. That is, the 25-year mandatory minimum is the result of Dupree's lengthy criminal history. The fact that he will be 74 years old when he is first eligible for parole is the result of his decision to commit an armed robbery while he was in his mid-40s. Given his lengthy criminal history, we conclude that he has demonstrated "an unwillingness to obey the law after prior encounters with the criminal justice system and that in light of his recidivism a greater punishment is reasonable." *Purdle (On Remand)*, ___ Mich App at ___; slip op at 6. Moreover, the severity of Dupree's crime is not lessened by the possibility that Dupree may die in prison. Rather, as recognized recently by this Court, the age of a defendant "is insufficient to overcome the presumption of proportionality, especially when considered in light of a defendant's criminal history and the gravity of [the] offense." *Purdle (On Remand)*, ___ Mich App at ___; slip op at 6.[5]

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[5] Dupree relies upon the dissent in *Purdle (On Remand)* as support for his position that his sentence amounts to a disproportionate "de facto" life sentence. A dissent, however, is not binding precedent. See *Rohde v Ann Arbor Pub Schs*, 265 Mich App 702, 707; 698 NW2d 402 (2005).