*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JERMAINE DUJUAN MAJOR-LANG,

      Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 342706
Muskegon Circuit Court
LC Nos. 16-006162-FC
         17-000801-FC

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for assault with intent to commit murder (AWIM), MCL 750.83; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and first-degree child abuse, MCL 750.136b(2). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case stems from allegations that defendant caused injuries to Nicole Taylor's daughter, LH, and subsequently shot Taylor in the leg in an attempt to kill Taylor.

Taylor was defendant's girlfriend. Defendant lived with Taylor at her apartment, along with the couple's three-month-old daughter and 18-month-old LH. Although defendant was not LH's father, Taylor indicated that defendant treated her like his daughter. Taylor testified that on November 3, 2016, she left the children in defendant's care for eight hours while she went to work. Nobody else was in the apartment when she left. While she was gone, Taylor communicated with defendant via cell phone. During these calls, defendant indicated that he "had whupped" LH because she spilled something. Defendant sounded calm, so Taylor assumed that it was a minor discipline incident. Defendant left when Taylor returned home. Taylor checked on LH and found her shaking and with blood in her diaper. Taylor texted defendant and told him that they needed to take LH to the hospital because of concerns regarding a urinary tract infection. However, Taylor also saw that LH was bruised in the stomach. When defendant returned to the apartment, he suggested waiting a few days because she had bruises and he thought that people at the hospital might find that suspicious.

-1-

Taylor texted her mother and requested that she call 911. The police arrived, and LH was transported to the hospital where she was examined. LH was subsequently transferred to DeVos Children's Hospital where she underwent further testing. Taylor testified that she was told that LH's hymen was torn but that there was no proof of penetration, that LH had two spinal fractures, and that LH's bruises were fresh. Although Taylor acknowledged that LH already had a "scratch" on her face from a fall at church one or two days previously, Taylor indicated that the other injuries were new. Taylor did not see this fall because LH had been taken to church by her relatives.

Taylor and LH returned home about 4:00 or 5:00 p.m. on November 4, 2016. At some point thereafter, defendant arrived at the apartment. Taylor testified that defendant pulled out his gun, shot the floor of the living room, pointed the gun at her, and told her to sit down. Taylor had her three-month old daughter in her arms. The gun jammed, and defendant fixed it. Defendant made a number of statements blaming Taylor for calling the police about LH. Taylor's mother arrived outside the apartment as this commotion was unfolding and called the police. Taylor testified that defendant told her that everyone in the house was going to die except for their three-month-old daughter. According to Taylor, defendant pointed the gun at LH and Taylor began to cry, scream, and plead with defendant. Then defendant shot Taylor in the leg while she was standing next to the door. Defendant subsequently tried to shoot himself in the forehead, but the gun was jammed. Defendant left. Taylor managed to crawl out of her apartment, by which time the paramedics had already arrived.

Dr. Yvonne Mallon, one of the medical doctors who examined and treated LH's injuries, testified at trial as an expert in child abuse and child sexual abuse. Mallon testified that LH had multiple bruises in various areas of her body, including both sides of her abdomen, and that LH had two compression fractures in the middle portion of her spine. Blood was also found in LH's vaginal exam. Mallon explained that LH's bruises "stood out" because they were in "soft areas," such as the abdomen, where it was unusual for a child to "get an accidental bruise." In her experience, children normally get bruises along boney surfaces such as their shins, knees, elbows, or forehead. Mallon opined that bruises in locations like the stomach or "a protected spot," such as the buttocks, caused "concern[] for non-accidental injuries." Mallon further testified that LH had bruises on the right side of her face, behind her left hear, above her buttocks, on her arm, on her wrist, and on her finger. Mallon testified that it was also concerning to see bruising that was bilateral, or on two different planes of the child's body, since an accidental fall would usually involve falling on one side of the body. LH's bilateral bruising was also indicative of a non-accidental injury.

Regarding the spinal compression fractures, Mallon testified that a compression fracture usually occurs from a heavy fall involving something falling on the head or falling on the buttocks against something hard. According to Mallon, such a fall could occur from either a high distance or from a short distance with additional force. She opined that, assuming "normal bones," a fall from a standard chair to the ground would not cause compression fractures. Mallon testified that LH's bones appeared normal based on her x-rays and examination. Mallon also ruled out a fall from "Pack & Play" as the source of LH's injuries. In addition, Dr. Mallon testified that the damage to the minor child's hymen made her extremely suspicious that there was "non-accidental penetrating genital trauma" since a typical accidental straddle fall would instead result in injuries of a different nature.

Defendant testified that he did not know why LH had blood in her diaper or how she incurred her various serious injuries. He indicated that on November 2, 2016, LH had bruises or scratches on her face after returning from staying with relatives. Defendant testified that he had friends over to the apartment on November 3, 2016, and that LH was at defendant's mother's house earlier in the day. He also testified that he watched LH that day and that when he told Taylor that he "whup[ped]" LH, he meant that he "had popped her on her hand." Defendant denied physically disciplining LH in any other way. Defendant stated that LH was an active child and that she sometimes would get "caught up in" her "Pack & Play" while climbing in and out of it by herself. Defendant further testified that he typically slept all day while the children watched television. Regarding the shooting incident, defendant claimed that he never intended to use the gun, or to shoot or kill Taylor, when he confronted her. He admitted that he shot Taylor in the leg but claimed that it "wasn't no intent" and that it was "really a scare tactic." Defendant testified that he meant to shoot the wall again but hit Taylor instead. Defendant denied saying that everyone other than the youngest child was going to die.

The jury found defendant guilty of AWIM, felony-firearm, and first-degree child abuse, as previously noted. This appeal followed.

## II. ANALYSIS

### A. EVIDENTIARY ISSUE

Defendant first argues that the trial court erred by allowing Taylor to testify regarding unreported acts of domestic violence by defendant without 15 days pretrial notice as required by MCL 768.27b. Relatedly, defendant argues that the prosecution violated MCL 768.27b by seeking to admit this evidence without providing 15 days pretrial notice, or good cause for the lack of notice, as required by MCL 768.27b(2).[1]

At trial, Taylor testified that when defendant resisted taking LH to the hospital, Taylor texted her mother and asked her to call 911. Taylor testified that she did not want to call the police herself because she was scared of defendant. After a discussion was held outside the presence of the jury regarding the direction the testimony was taking and potential issues with admissibility, the jury was brought back into the courtroom and Taylor testified that she was afraid of defendant hurting her because "he had domestic violence issues in the past." Taylor

---

[1] This provision provides as follows

> If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown. [MCL 768.27b(2).]

Although MCL 768.27b has been amended since defendant's trial, Subsection (2) was not changed. Compare 2006 PA 78 with 2018 PA 372.

-3-

explained, "We fought a lot and I was usually on the losing side when we fought." Taylor further testified that she received wounds from their fights, such as "[b]lack eye, busted lip, burns." Taylor testified that defendant also "stabbed" her in her legs the "last time [she] tried to leave."

In making its ruling to allow the prosecutor to elicit the above testimony regarding defendant's history of domestic violence, a discussion was held outside the presence of the jury during which the following exchange occurred:

> *The Court*: All right. Now . . . it sounds like we have a few questions coming up about prior alleged acts of domestic violence by the defendant against Ms. Taylor; i.e., the things that make her afraid.
>
> [Prosecutor], you're proposing to admit those under 768.27?
>
> [*Prosecutor*]: That's correct.

Following further discussion between the trial court and prosecutor that is not pertinent to the issues raised on appeal, defense counsel began her objection to the introduction of the evidence by stating, "And I understand there's no notice requirement for—for this . . . ." Defense counsel then continued to raise various objections to the evidence, none of which amounted to an argument that the prosecutor was required to provide 15 days pretrial notice before the evidence could be admitted or that MCL 768.27b applied in lieu of MCL 768.27 such that MCL 768.27 could not provide a basis for admission of the challenged evidence related to prior incidents of domestic violence. The trial court ruled that the proposed testimony was admissible, determining that it was relevant to demonstrating defendant's intent.

As an initial matter, we note that defendant's appellate argument is factually inaccurate because the challenged testimony was found to be admissible under MCL 768.27, not MCL 768.27b. Defendant argued in the trial court against admitting the evidence under MCL 768.27 without asserting that the admissibility of the evidence should be determined under MCL 768.27b in addition to, or instead of, MCL 768.27. Thus, to the extent that defendant now argues on appeal that the evidence was inadmissible under MCL 768.27b, this argument is unpreserved. Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993).

We review unpreserved claims of error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Defendant bears the burden of demonstrating prejudice. *Id*.

In this case, defendant argues that Taylor's testimony concerning prior incidents of domestic violence was inadmissible under MCL 768.27b. However, in his arguments to this

Court, defendant fails to address the plain statutory language which states: "This section does not limit or preclude the admission or consideration of evidence under any other statute, rule of evidence, or case law." MCL 768.27b(3), as added by 2006 PA 78.[2] We apply unambiguous statutory language as written. *Braska v Challenge Mfg Co*, 307 Mich App 340, 352; 861 NW2d 289 (2014). Defendant makes no argument on appeal that the challenged testimony was somehow not admissible under MCL 768.27, which is the statute under which the testimony was actually admitted. Therefore, defendant has abandoned any such argument "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

To the extent defendant generally argues that the evidence was inadmissible based on a lack of sufficient pretrial notice, defendant affirmatively waived this challenge through defense counsel's statement on the record, "And I understand there's no notice requirement for—for this," which defense counsel made in response to the prosecutor's indication that he was proposing to admit the evidence under MCL 768.27.[3]

"Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted). Trial counsel's express approval of the trial court's decision constitutes a waiver. *Id*. at 216. "Counsel may not harbor error as an appellate parachute." *Id*. at 214. A waiver may be accomplished through the action of defense counsel when the issue involves a matter within counsel's authority to manage the conduct of the trial matter or trial strategy, such as when the issue involves a trial court's evidentiary ruling. *Carter*, 462 Mich at 218-219. "[D]ecisions by counsel are generally given effect as to what arguments to pursue, . . . what evidentiary objections to raise, . . . and what agreements to conclude regarding the admission of evidence . . . ." *Id*. at 218 (quotation marks and citation omitted; ellipses in original).

In this case, defense counsel explicitly agreed that the trial court could make its evidentiary decision regarding admission of the prior-acts testimony without any consideration of notice because the statute under which the prosecution sought admission did not require

---

[2] This statute has since been amended by 2018 PA 372. We have quoted the statute as it existed at the time of defendant's trial.

[3] We express no opinion in this decision on the interaction between MCL 768.27 and MRE 404(b)(2) because defendant also has not argued on appeal that the evidence was admitted in violation of the notice requirement in MRE 404(b)(2). Because defendant has not raised this issue on appeal as a ground for relief, it is abandoned and we decline to consider it. *Kelly*, 231 Mich App at 640-641.

notice. Defense counsel's decision regarding the basis on which to object to this testimony was one within counsel's authority for managing the conduct of the trial, and defense counsel's statement constituted an express waiver of any challenge on the ground of notice. *Id*. at 215-216, 218-219.

Defendant also seems to suggest, in another unpreserved argument that was not timely raised in the trial court,[4] that Taylor's testimony about defendant's alleged prior acts of domestic violence was inadmissible because the trial court did not first make a preliminary inquiry or finding of fact under MRE 104(b) that the prior incidents of domestic violence actually occurred. We review this unpreserved argument for plain error. *Carines*, 460 Mich at 763-764.

MRE 104(b) provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." However, with respect to other-acts evidence where "the relevancy is conditioned on fact, as enforced through MRE 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *People v Kelly*, 317 Mich App 637, 645; 895 NW2d 230 (2016) (quotation marks and citation omitted). Other-acts evidence may be uncharged conduct. *Id*. at 646 n 3. Moreover, the United States Supreme Court has held that it is not necessary for a trial court to "itself make a preliminary finding that the Government has proved the 'other act' by a preponderance of the evidence before it submits the evidence to the jury." *Huddleston v United States*, 485 US 681, 682; 108 S Ct 1496; 99 L Ed 2d 771 (1988). Under FRE 104(b), "the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *Id*. at 690. FRE 104(b) permits the trial judge to admit evidence subject to proof of the underlying fact, but it is "not the responsibility of the judge sua sponte to insure that the foundation evidence is offered." *Id*. at 690 n 7. FRE 104(b) is materially identical to MRE 104(b).[5] Our Supreme Court adopted the framework set forth in *Huddleston* for FRE 404(b) as the legal framework to be employed for MRE 404(b); this framework relies in part on the application of rule 104(b). *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), as amended by 445 Mich 1205 (1994). Thus, defendant has also not demonstrated plain error based on his argument that the trial court was required to take it upon itself to make a factual finding that the alleged prior acts of domestic violence actually occurred before permitting the evidence to be admitted.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

---

[4] See *Metamora Water Serv, Inc*, 276 Mich App at 382; *Stimage*, 202 Mich App at 30; MRE 103(a)(1).

[5] At the time that *Huddleston* was decided, the language of FRE 104(b) was identical to the language of MRE 104(b). Although the language of FRE 104(b) has since been amended "as part of the restyling of the Evidence Rules," the changes were "intended to be stylistic only" and there was "no intent to change any result in any ruling on evidence admissibility." See FRE 104, advisory committee note to the 2011 amendments.

Next, defendant argues that defense counsel was ineffective for failing to retain an expert witness in the field of biomechanical engineering to support the defense theory that LH was injured in an accident and to rebut Mallon's expert testimony that the nature of LH's injuries was indicative of non-accidental causes.

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law, with a court's factual findings being reviewed for clear error and questions of law being reviewed de novo. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant preserved this issue by moving this Court to remand for purposes of an evidentiary hearing regarding his ineffective assistance of counsel claim. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). However, this Court denied defendant's motion.[6] Our review is therefore limited to the appellate record. *Id*. at 659.

"A defendant that claims he has been denied the effective assistance of counsel must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Id*. "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

In support of his ineffective assistance of counsel claim, as well as his alternative request that we remand this matter for an evidentiary hearing to develop a further factual record, defendant has submitted to this Court an "offer of proof" completed by appellate counsel and a report prepared by biomechanical engineers Keith Button and Steven Rundell. In appellate counsel's offer of proof, appellate counsel states that he spoke to defendant's trial counsel, who informed appellate counsel that she did not consult an expert or consider calling one to testify at trial. The report prepared by Button and Rundell states that despite Mallon's testimony, vertebral compression fractures may be caused by an "accidental fall from a short height (less than 2 meters)" and that there "is absolutely no scientific or biomechanical foundation to conclude that the kinematic environment associated with that required to cause compressive fractures of the thoracic spine is 'non-accidental.' " The report states further that "there is no indication that any biomechanical calculations were performed to determine the actual forces [LH] would have experienced as a result of a fall from any height. Therefore, there is no basis to support Dr. Mallon's conclusion that the injuries sustained by [LH] were not accidental nor is there basis to support Dr. Mallon's opinions regarding fall height required to produce fracture."

Even if we were to assume that defense counsel's decision not to engage an expert without first conducting a reasonable investigation fell below an objective standard of

---

[6] *People v Major-Lang*, unpublished order of the Court of Appeals, entered November 7, 2018 (Docket No. 342706). Shortly before case call, defendant brought an identical motion which was again denied.

reasonableness,[7] see *People v Ackley*, 497 Mich 381, 390; 870 NW2d 858 (2015) ("While an attorney's selection of an expert witness may be a 'paradigmatic example' of trial strategy, that is so only when it is made '*after* thorough investigation of [the] law and facts' in a case.") (citation omitted; emphasis and alteration in original); see also *id*. at 383-387, 389, 393 (concluding that "counsel's efforts to investigate and attempt to secure suitable expert assistance in preparing and presenting defendant's case fell below an objective standard of reasonableness" where defense counsel failed to contact expert witnesses to whom he had been referred and who could have testified in support of the defense theory that the decedent child victim's injuries were the result of an accidental fall rather than blunt force trauma or shaking), defendant still has not demonstrated that his proposed expert evidence establishes a reasonable probability that the outcome of the proceedings would have been different.

The report by Button and Rundell only discusses whether spinal compression fractures may be caused by accidental short falls but does not specifically address whether any of the other injuries suffered by LH—which included injuries to her hymen and bilateral bruising on soft, protected areas of her body—could have been caused by accidental means. The report also does not include any discussion addressing Mallon's opinions that the location of the bruising (on soft, protected areas where children are unlikely to get accidental bruises), the bilateral nature of the bruising, and the nature and location of the injuries to the child's hymen all suggested non-accidental causation. Moreover, there was testimony that defendant had told Taylor that he "whupped" LH: the jury could have reasonably determined that an exceedingly forceful physical assault was the non-accidental cause that explained LH's various injuries. The expert report submitted by defendant on appeal merely quibbles with Mallon's opinions about fall height as a potential cause of the injuries.

Because the report does not address LH's multiple other injuries or the evidence suggesting a cause other than a fall of *any* kind, defendant has not demonstrated that the proposed expert testimony that he argues defense counsel should have obtained could reasonably have resulted in a different outcome at trial. *Sabin*, 242 Mich App at 659. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense," *People v Russel*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted; alteration in original), and "[a] substantial defense is one that might have made a difference in the outcome of the trial," *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted). Defendant has therefore failed to demonstrate that he received ineffective assistance of counsel because he has not shown that he was prejudiced by defense counsel's performance. *Strickland v*

---

[7] Because, for the reasons that follow, it is unnecessary for us to decide whether defense counsel's performance was deficient, we decline to do so.

*Washington*, 466 US 668, 700; 104 S Ct 2052; 80 L Ed 2d 674 (1984) ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello