*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FRANZEL, Minors.

UNPUBLISHED
August 15, 2019

Nos. 346547; 347366
Washtenaw Circuit Court
Family Division
LC Nos. 17-000126-NA
　　　　17-000127-NA
　　　　17-000128-NA
　　　　17-000129-NA

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals, in Docket No. 346547, respondent-father and respondent-mother, the adoptive parents and maternal grandparents of the children, initially appealed by right the trial court order assuming jurisdiction over ARF, APF, HMF, and AJF. However, during the pendency of this appeal, respondents narrowed the issues to jurisdiction and termination of their parental rights to AJF. In Docket No. 347366, respondents appeal by right the trial court order terminating their parental rights to the four minor children pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (reasonable likelihood of harm if returned to parents). We affirm.

## I. EVIDENTIARY ERROR

Respondents argue that the trial court erred in admitting the expert testimony of Dr. James Henry at the adjudication hearing. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). Preliminary questions of law regarding the admissibility of evidence are reviewed de novo. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002).

The trial court qualified Dr. Henry as an expert in child maltreatment, development, and trauma. At the adjudication hearing, Dr. Henry testified about assessments that were performed on the minor children at the Children's Trauma Assessment Center (CTAC). On appeal, respondents argue that Dr. Henry was not qualified to testify as an expert because he was not a licensed psychologist or licensed social worker. Respondents contend that the lack of a license

should have precluded Dr. Henry from testifying about assessments and evaluations. We disagree.

MRE 702 governs the admissibility of expert witness testimony in Michigan, and it provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

MRE 702 incorporates the standards of reliability that the United States Supreme Court established in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), in interpreting the equivalent federal rule of evidence. See *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781-782; 685 NW2d 391 (2004). Under *Daubert*, a trial court must "determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 US at 592.

Respondents challenge Dr. Henry's qualifications but do not discuss the principles and methods he utilized in preparing the trauma assessments. Respondents argue that Dr. Henry's lack of licensure made him unqualified to testify about trauma assessments and evaluations. However, "MRE 702 expressly provides that an expert may be qualified by virtue of his knowledge, skill, experience, training, or education. It does not refer to licensing as a method of qualification, much less as a requisite for the qualification of an expert." *Mulholland v DEC Int'l Corp*, 432 Mich 395, 403-404; 443 NW2d 340 (1989). Instead, "[a]t best, a license is *evidence* of qualifications and thereby a useful shorthand in day-to-day commerce." *Id*. Moreover, a license's "value as evidence of qualifications is diminished in the courtroom where the expert is available and there is time for careful interrogation by both parties." *Id*. at 403-404.

The court did not err in determining that Dr. Henry was qualified to testify as an expert based upon the knowledge he acquired through experience, training, and education. Specifically, he earned both a bachelor's and a master's degree in social work and obtained a Ph.D. in social work and developmental psychology at Michigan State University. Dr. Henry completed a postgraduate fellowship in child abuse and neglect. Dr. Henry also had significant experience in the field. He worked for 18 years as the director of the CTAC, which had served approximately 4,200 children, had extensive experience in participating in trauma assessments, and testified that he was qualified as an expert witness in approximately 150 to 200 child welfare cases in Michigan, Colorado, and Indiana.

Respondents do not argue that Dr. Henry's testimony was not based on sufficient facts or data, was the product of unreliable principles and methods, or that the methodology was improperly applied to the facts of this case. In their brief and the motion below, they note that Dr. Henry spoke with or observed the children, reviewed "numerable documents" from the

caseworkers and respondents, and the CTAC prepared trauma assessment reports for each of the children. They admit that Dr. Henry also interviewed respondents. Respondents assert that the absence of licensure is a bar to his testimony. In support of this contention on appeal, respondents attach a cease and desist order issued to Dr. Henry by the Colorado Board of Registered Psychotherapists. However, this order was not part of the lower court record, it is an improper expansion of the record on appeal and cannot establish an abuse of discretion. See *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Moreover, even if this Court were to consider the order, it does not change our analysis. As previously discussed, Dr. Henry was qualified to opine on child trauma and the trauma sustained by the children in this case based on his knowledge, experience, and education. Evidence that Dr. Henry was not licensed in Colorado did not negate his qualifications to offer opinion testimony under MRE 702.

Additionally, respondents argue that Dr. Henry violated numerous provisions of the Public Health Code, MCL 333.1101 *et seq*. It is undisputed that Dr. Henry was not licensed as a psychologist or a social worker. To the extent that respondents argue the evaluations were unlawful because they were conducted by an individual without the proper licensure, Dr. Henry testified that he was part of a team that included licensed practitioners. Dr. Henry explained that his clinical practice was performed under the supervision of Dr. Margaret Richardson, who was licensed. The trial court found this testimony credible. Respondents do not dispute that a licensed practitioner can supervise an unlicensed practitioner. Therefore, their argument concerning the Public Health Code is unpersuasive.

In sum, Dr. Henry was qualified to testify under MRE 702 based on his knowledge, experience, training and education, his testimony was based on sufficient facts and data, was the product of reliable principles and methods, and the methodology was properly applied to the facts of the case. Accordingly, the trial court did not abuse its discretion in admitting Dr. Henry's testimony under MRE 702.

## II. JURISDICTION

Next, respondents argue that the trial court erred in assuming jurisdiction over AJF.[1] We disagree.

We review for clear error the trial court's findings underlying its decision to assert jurisdiction after a bench trial. See *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A finding is clearly erroneous if, although there was evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App at 295. "Jurisdiction must be established by a preponderance of the evidence." *Id*. MCL 712A.2(b) provides, in relevant part, that a trial court has jurisdiction over a minor as follows:

---

[1] Respondents do not contest jurisdiction as to the other three minor children.

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

The trial court did not clearly err in finding statutory grounds to assume jurisdiction of AJF as to both respondents. It is noteworthy that the respondents do not dispute that they allowed AJF to believe that he was their biological child, failed to assist him in reaching developmental milestones such as independent toileting, and even did his school work. These actions alone could support a determination of neglect and risk of harm even if AJF was the only child in the home. At nearly seven-years-old, AJF soiled himself, slept with a sippy cup, and expected to be dressed. While the clinical social worker disagreed, Dr. Henry testified that the maltreatment of the siblings created an unfit environment for AJF and posed a substantial risk of harm to his mental well-being. The court received testimony that respondents alienated AJF from his siblings. There was evidence that mother told AJF that HMF was a "bad guy" and that HMF was blamed for everything bad that happened to AJF. When AJF was removed from respondents' home and placed with his sisters at his aunt's home, he developed a good relationship with them. After AJF returned to respondents' home, AJF became "more standoffish." Dr. Henry testified that respondents made AJF aware that his sisters were at fault and that his sisters harmed him. Dr. Henry testified that respondents engaged in an act of "extreme betrayal" when they placed a recording device in AJF's backpack and enlisted AJF in an effort to spy on his siblings. Dr. Henry testified that this act violated the safety of AJF's relationship with his siblings and placed AJF in an untenable position of harm. According to Dr. Henry, the act amounted to a mental injury and significant emotional harm. In recommending that AJF be removed from respondents' home, Dr. Henry considered respondents' poor treatment of AJF's siblings. Moreover, Dr. Henry testified that respondents did not have any sense of responsibility with respect to their treatment of AJF's siblings.

In summary, although the verbal and physical abuse in this case was perpetrated upon AJF's siblings, we cannot find that the trial court erred in finding that respondents' conduct created an environment that was unfit for AJF and posed a substantial risk of harm to his mental well-being. AJF witnessed the abuse perpetrated against his siblings, and even after the siblings were removed, respondents continued to alienate AJF from his sisters.

Moreover, the doctrine of anticipatory neglect may apply to confer jurisdiction. See *In re BZ*, 264 Mich App at 296. "The doctrine of anticipatory neglect recognizes that [h]ow a parent

treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 38 (2001) (quotation marks and citation omitted). In this case, respondents' mistreatment of AJF's siblings was probative of their potential future mistreatment of AJF. In short, we are not left with a definite and firm conviction that the trial court erred in finding statutory grounds to assume jurisdiction over AJF.

## III. TERMINATION

Respondents argue that the trial court erred in finding statutory grounds to terminate their parental rights to AJF. Again, we disagree.

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous if, although there was evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich at 152.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

The trial court terminated respondents' parental rights in part pursuant to MCL 712A.19b(3)(g),[2] which provides that termination is proper when there is clear and convincing evidence that: "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."[3] In this case, the trial court did not clearly err in finding clear and convincing evidence to terminate respondents' parental rights under MCL 712A.19b(3)(g).

As previously discussed, respondents created an environment that posed a significant risk to the mental well-being of AJF. Mother verbally and physically abused AJF's three siblings, and father failed to intervene to stop the abuse. Mother demeaned the siblings and consistently called them derogatory names, including "b----," "a------," "monster' "retarded," "lazy brat," and "dumb," and father did not prevent the verbal abuse. Testimony showed that on one occasion, mother physically assaulted HMF by pushing her to the ground and repeatedly kicking her. On a

---

[2] The trial court also found grounds for termination under MCL 712A.19b(3)(j). However, because we conclude that the trial court did not clearly err in finding at least one statutory ground for termination, we need not address this additional ground. See *In re HRC*, 286 Mich App 44, 46; 781 NW2d 105 (2009).

[3] We note that petitioner filed its original petition for temporary custody on November 22, 2017, and a supplemental petition for permanent custody on November 5, 2018, pursuant to MCL 712A.19b(3)(g) and (j). MCL 712A.19b(3)(g) was amended, effective June 12, 2018. See 2018 PA 58. The court terminated respondent's parental rights on January 9, 2019 under the amended version.

recording, mother stated that sometimes children should be kicked "if they deserve it." ARF testified that mother slapped her regularly before 2015. The parental conduct caused the siblings to suffer complex trauma, depression, and anxiety, and two of the siblings suffered PTSD. AJF was exposed to the abusive environment, and respondents engaged in conduct that alienated AJF from his siblings. The trial court did not clearly err in finding that this amounted to a failure to provide proper care and custody of AJF.

In addition, there was no reasonable expectation that respondents would change and provide proper care and custody of AJF considering AJF's age. After AJF was removed from the home and then returned to respondents care his relationship with his siblings deteriorated. Respondents undermined and damaged AJF's relationship with his siblings when they planted a recording device in AJF's backpack during one of his sibling visits and instructed him to lie about the device. Dr. Henry testified that this was an act of "extreme betrayal" that violated the safety of AJF's relationship with his siblings and placed AJF in an untenable position of harm. Respondents did not voluntarily participate in recommended services and at the adjudication hearing, they blamed others for the proceeding. Respondents then failed to consider AJF's well-being when they engaged in contempt of court by having mother abscond to Tennessee with AJF in violation of the trial court's order.

Moreover, "[e]vidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011). "It is thus appropriate for a trial court to evaluate a respondent's potential risk to the other siblings by analyzing how the respondent treated another one of his or her children . . . ." *Id*. In this case, there was ample evidence of mother's mistreatment of AJF's three siblings and father's failure to intervene to prevent the mistreatment. Evidence of how respondents treated the three siblings supported that respondents were not likely to provide proper care or custody for AJF within a reasonable amount of time. In sum, considering the record as a whole, we are not be left with a definite and firm conviction that the trial court erred in finding grounds for termination under MCL 712A.19b(3)(g).[4]

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

---

[4] Respondents' Statement of Questions Presented listed the additional issue of reasonable efforts, however the substance of their brief makes no mention of this issue. We therefore find the issue abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).