*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVON KAREEM-BUCKINGH ROBINSON,

        Defendant-Appellant.

UNPUBLISHED
October 27, 2022

No. 356401
Wayne Circuit Court
LC No. 19-008817-01-FC

Before: RONAYNE KRAUSE, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of three counts of first-degree premeditated murder, MCL 750.316(1)(a); two counts of assault with intent to commit murder (AWIM), MCL 750.83; and five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Defendant was sentenced to life imprisonment without the possibility of parole for each first-degree murder conviction, 10 to 20 years imprisonment for each AWIM conviction, and two years imprisonment for each felony-firearm conviction. We affirm defendant's convictions, vacate his first-degree murder sentences, and remand for resentencing.

## I. BACKGROUND

This case arises from the murders of Timothy Blancher, Alunte Davis, and Paris Cameron. The murders occurred while Blancher, Cameron, and Davis were in a home located at 3474 Devonshire Street in Detroit. Blancher, Cameron, and Davis died after defendant shot them multiple times. Clifton Keys and Armon Matthews were also present in the home at the time of the murders, but they escaped the gunfire.

On May 24, 2019, Lance Atterberry had a party at his home at 3474 Devonshire Street. In relevant part, Blancher, Cameron, Davis, Keys, Matthews, and Brandon Suttles attended the party. At about 2:30 a.m., on May 25, 2019, Blancher, Cameron, Davis, Keys, and Matthews went to a nearby BP gas station. Defendant was at the gas station when they arrived. Cameron approached defendant and invited him to the party even though he was a stranger. Defendant went to the party,

where he engaged in sexual activities with Blancher, Cameron, Davis, and two other individuals. Several guests joked about the "orgy" and defendant's sexuality.

Atterberry, Blancher, Cameron, Davis, Keys, Matthews, and Suttles were present when defendant left the house, with Keys and Matthews noting that defendant's demeanor was concerning and that defendant informed them that they would "see [him] again." Atterberry and Suttles later left 3474 Devonshire Street and drove to the other side of Detroit. Blancher, Cameron, Davis, Keys, and Matthews remained in the home and waited for Suttles and Atterberry to return. As they were sitting around a table and "laughing" about the events that occurred, an individual wearing a ski mask entered the home and began shooting. Keys saw the shooter's eyes and noted he had the same complexion as defendant. Keys and Matthews, who could not see the shooter, were able to avoid the gunfire. Blancher, Cameron, and Davis were fatally wounded. Defendant's DNA was later found on Blancher's right hand.

Law enforcement was contacted. Based on statements made by "the witnesses," members of law enforcement extracted video from the BP gas station. Defendant was identified as the individual present at the gas station, and law enforcement determined defendant lived at 3440 Buckingham Avenue, which is two blocks away from 3474 Devonshire Street. Members of law enforcement were unable to locate defendant at that address. They were informed defendant and Mallory Robinson, defendant's mother, left 3440 Buckingham Avenue shortly after the crimes were committed.

Records from a phone associated with defendant were obtained. Members of law enforcement determined that a house across the street from 3440 Buckingham Avenue had a camera attached to the house, as did the house across the street from 3474 Devonshire Street. The video footage was extracted. Phone records were compared with the videos, which further implicated defendant in the crimes. Law enforcement's efforts to locate defendant were unsuccessful until an anonymous tipster informed law enforcement defendant could be located on Clairmount Avenue in Detroit. Law enforcement followed up on the tip, and defendant was arrested on June 5, 2019. Defendant was charged with three counts of first-degree murder, two counts of AWIM, and five counts of felony-firearm.[1]

At trial, defendant argued there was insufficient evidence to establish beyond a reasonable doubt that he committed the crimes. Detective Paytra Williams testified about the investigation in detail, including how defendant came to be a suspect and how defendant was apprehended. Defendant was found guilty as charged and was sentenced as described above. Defendant moved the trial court for a new trial or, in the alternative, for a *Ginther*[2] hearing. The motions were denied, as was defendant's motion before this Court to remand to the trial court for a *Ginther* hearing.[3]

---

[1] The firearm involved in the crimes was never recovered.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Robinson*, unpublished order of the Court of Appeals, entered April 21, 2022 (Docket No. 356401).

## II. PROSECUTORIAL ERROR

Defendant argues he was denied a fair trial because the prosecutor committed misconduct by relying on inadmissible hearsay evidence during closing arguments.[4]

## A. STANDARD OF REVIEW

Defendant argues that the prosecutor improperly relied on hearsay evidence, which the trial court excluded from evidence, during closing arguments. Because defendant did not object to the prosecutor's argument or request a curative instruction in the trial court, the issue unpreserved. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Unpreserved issues "are reviewed for plain error affecting substantial rights." *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020).

> To avoid forfeiture under the plain error rule three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 653 (quotation marks and citation omitted).]

## B. ANALYSIS

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

> A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (quotation marks and citations omitted).]

Defendant argued at trial that there was insufficient evidence to establish identity, and Detective Williams provided detailed testimony concerning how defendant came to be a suspect and how he was apprehended by law enforcement. Detective Williams testified that "the witnesses" informed members of law enforcement that "they had met and encountered a person at

---

[4] This Court has recognized that although "prosecutorial misconduct" is a commonly accepted term of art in criminal appeals, it is a misnomer when referring to allegations that do not involve violations of the rules of professional conduct or illegal activity. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Less egregious conduct involving inadvertent or technical error is more properly characterized as "prosecutorial error." *Id*. at 88.

the [BP] gas station prior to the shooting happening." Members of law enforcement extracted video from inside the BP gas station, sent certain "clips" to the media, and attempted to identify the individual through facial recognition software. Facial recognition software and tips that were reported through Crime Stoppers supported that defendant was the individual in the gas station.

Defendant's last known address was 3440 Buckingham Avenue, but members of law enforcement were unable to locate him at that address. They continued to investigate and obtained video footage from the houses across the street from 3440 Buckingham Avenue and 3474 Devonshire Street. Detective Williams testified that the videos, "all the other information" that was gathered, and "all of the information [that was] coming [in]" concerned defendant. Detective Williams testified: "None of the tips that we received were tips on anybody else." Defense counsel objected on the basis of hearsay, and the trial court sustained the objection. Detective Williams testified defendant was ultimately located on Clairmount Avenue because of an anonymous tip. Detective Williams also testified about other individuals who were investigated, and she explained why they were ruled out as suspects. Detective Williams denied that law enforcement received tips about other suspects and acknowledged that law enforcement received tips concerning defendant. Defense counsel again objected on hearsay grounds, and the objection was sustained.

During closing arguments, the prosecutor summarized the evidence that supported defendant committed the crimes, which included witness testimony, the videos, the phone records, and statements made by defendant during an interview with law enforcement and during recorded phone conversations. The prosecutor also referenced defendant's and Mallory's lack of cooperation and argued that defendant committed the crimes because he did not want people to know he was gay. As relevant to this appeal, the prosecutor made the following argument:

So a week and a half passes and the defendant is found on the other side of the City on Clairmount. Okay. And the police only find him, not from any help from defendant's family members in this case. They only find him because of an anonymous tip . . . People are allowed to report anonymously. We allow people to report anonymously. That is for their safety. That is because people are afraid. We do not want people to not report homicides and suspects to us because they're afraid of being outed. So this tip is good and all tips that they are getting in this case only have to do with the defendant, because this detective is following up on every lead she can find. Every lead she can find.

As a general rule, "[p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citations omitted). A prosecutor is "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id.* (quotation marks and citations omitted). However, "[a] prosecutor may not make a factual statement to the jury that is not supported by the evidence. . . ." *Dobek*, 274 Mich App at 66 (citations omitted).

Relative to the prosecutor's closing argument, evidence supported that: (1) law enforcement received tips defendant was the individual depicted in the BP gas station video footage, and (2) law enforcement received an anonymous tip defendant was located on Clairmount Avenue in June 2019. Thus, the prosecutor's arguments concerning the tips as to defendant's identity and the anonymous tip as to defendant's location in June 2019 were proper. However, we

agree with defendant that the prosecutor's argument that "all tips" law enforcement was "getting . . . only ha[d] to do with the defendant" was improper because the trial court sustained objections concerning Detective Williams's testimony that law enforcement only received tips concerning defendant's involvement in the crimes. Because the prosecutor relied on this excluded evidence during closing arguments, defendant has established plain error.

However, defendant cannot establish a plain error that affected his substantial rights. The trial court instructed the jury multiple times to base its verdicts on the evidence presented at trial. The jury was instructed that neither attorneys' arguments nor evidence excluded by the trial court during the trial were evidence. "It is axiomatic that jurors are presumed to have followed their instructions." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Moreover, given the properly admitted evidence, there is no basis to conclude that the prosecutor's error resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Indeed, witness testimony, video evidence, and defendant's evasion of law enforcement after the crimes overwhelmingly support the jury's finding that he perpetrated the crimes.

Defendant also argues the prosecutor's argument about the tips received by law enforcement concerning defendant improperly bolstered Detective Williams's testimony. It is well settled "[a] prosecutor may not vouch for the credibility of his [or her] witnesses by suggesting that he [or she] has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (quotation marks and citations omitted; alteration in original). The prosecutor's argument that "all tips" only related to defendant was made after the prosecutor detailed information that led law enforcement to defendant. The prosecutor noted Detective Williams's testimony that she investigated other suspects but ruled them out. The prosecutor was merely arguing that Detective Williams did not solely focus on defendant. Instead, she conducted further investigation. While the prosecutor should not have argued "all tips" law enforcement received only related to defendant for the reasons already discussed, when viewing the prosecutor's argument in context, it did not amount to improper credibility vouching. Rather, it amounted to a summary of the steps law enforcement took in investigating the case. Defendant has failed to establish plain error.

## III. ASSISTANCE OF COUNSEL

Defendant also argues that he was denied effective assistance of counsel when counsel failed to object to the prosecutor's argument that members of law enforcement only received tips concerning defendant.

Even assuming defendant is correct that counsel's performance was deficient and not a matter of trial strategy, we conclude defendant is not entitled to relief. Indeed, given the overwhelming evidence of guilt in this case, there is not a reasonable probability that the outcome of the proceedings would have been different had counsel objected to the prosecutor's improper argument. Moreover, the prosecutor's argument was brief. Therefore, defendant is not entitled to relief on his ineffective assistance of counsel claim. We also decline to remand the matter for a *Ginther* hearing because defendant has not set forth any additional facts that would require the

development of a record to determine if defense counsel was ineffective. See MCR 7.211(C)(1)(a)(ii).[5]

## IV. SENTENCING

Defendant argues mandatory life without parole sentences for defendants who commit first-degree murder when they are 18 years old violates US Const, Am VIII, and Const 1963, art 1, § 16 of the Michigan Constitution.

## A. STANDARDS OF REVIEW

We review questions of constitutional law de novo. *People v Warner*, ___ Mich App ___, ____; ___ NW2d ___ (2021) (Docket No. 351791); slip op at 15, lv pending. "This Court reviews sentencing decisions for an abuse of discretion." *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Warner*, ___ Mich App at ___; slip op at 3. In the context of sentencing, a trial court abuses its discretion by violating the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017).

## B. ANALYSIS

Defendant first argues that MCL 750.316(1) violates the rights of all criminal defendants who commit first-degree murder when they are 18 years of age because it subjects them to cruel or unusual punishment. This argument sets forth a facial challenge to the constitutionality of MCL 750.316(1). In *People v Parks*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162086); slip op at 12-13, the Supreme Court recently held a sentence of mandatory life without parole for defendants who were 18 years of age at the time of the sentencing offense violates the Michigan Constitution's ban on "cruel or unusual" punishment. The Supreme Court reached this conclusion after determining that such a sentence lacks proportionality because it fails to take into account the mitigating characteristics of youth, specifically late-adolescent brain development. *Id*. at ___; slip op at 16-33. As relevant to this appeal, the Supreme Court held Const 1963, art 1, § 16

> requires that 18-year-olds convicted of first-degree murder receive the same individualized sentencing procedure under MCL 769.25 as juveniles who have committed first-degree murder, instead of being subjected to a mandatory life-without-parole sentence like other older adults. [*Parks*, ___ Mich at ___; slip op at 13.]

---

[5] To the extent defendant argues that the trial court abused its discretion by denying his motion for a new trial, the argument is abandoned because defendant does not cite any relevant authority. Indeed, defendant does not even reference the relevant standard of review. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Therefore, when sentencing an individual who committed first-degree murder when he or she was 18 years old or younger, trial courts are required to follow the procedure outlined in MCL 769.25. *Id.* at ___; slip op at 13.

Defendant was 18 years old at the time of the crimes and was mandatorily subjected to a sentence of life without parole on the first-degree murder convictions under MCL 750.316(1). Under the holding in *Parks*, we are required to conclude that defendant's automatic sentence of life without parole is unconstitutional because it violates "the principle of proportionality derived from the Michigan Constitution, and thus constitutes unconstitutionally cruel punishment under Const 1963, art 1, § 16." See *Parks*, ___ Mich at ___; slip op at 35 (citations omitted). We therefore vacate the first-degree murder sentences and remand to the trial court for resentencing. See *id.* at ___; slip op at 35. On remand, the trial court must follow the procedure outlined in MCL 769.25.[6]

## V. CONCLUSION

Defendant's convictions are affirmed, but his sentences for first-degree murder are vacated, and the matter is remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[6] Given this holding, it is unnecessary to consider the remainder of defendant's constitutional arguments. See *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010) ("It is well established that a court will not decide moot issues.").