*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 29, 2024

v

No. 367726
Shiawassee Circuit Court
LC No. 2022-007080-FH

JORDAN LEE HOISINGTON,

        Defendant-Appellant.

Before: REDFORD, P.J., and GADOLA, C.J., and RIORDAN, J.

PER CURIAM.

Defendant pleaded guilty to third-degree killing or torture of an animal, MCL 750.50b(5).[1] The trial court imposed a sentence of 32 to 49 months' imprisonment, a 23-month upward departure from the applicable guidelines range. Defendant now appeals by leave granted,[2] arguing that the trial court failed to adequately justify the extent of its upward departure. For the reasons set forth in this opinion, we vacate defendant's sentence and remand to the trial court for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's conviction arose after animal control responded to a report of two deceased dogs on her property. According to the presentence investigation report (PSIR), on December 2, 2021, defendant's tenant used bolt cutters to open a padlocked door on the property, having become increasingly aware of a foul odor in the residence. The tenant cut the lock, and behind the door were "two dogs that looked to have been deceased for a very long time." A cellular phone video revealed the dogs' decaying bodies and empty food bowls. Animal control officers surmised that the dogs were confined to the bathroom for three or more months. The tenant informed defendant of the discovery, and defendant and her mother arrived at defendant's property on December 4, 2021, to clean the upstairs bathroom and remove the dogs' remains. The tenant then contacted Shiawassee Animal Control on December 7, 2021. Animal control

---

[1] A second count charging the same offense was dismissed pursuant to a plea agreement.

[2] *People v Hoisington*, unpublished order of the Court of Appeals, entered November 2, 2023 (Docket No. 367726).

officers investigated the matter and confirmed that defendant was the owner of the two deceased dogs. Defendant was arrested on March 31, 2022.

Defendant offered her description of the offense in the PSIR. Defendant stated that she moved out of her residence on an unspecified date in 2021 and began to live with her then-boyfriend. Defendant did not take her two dogs with her, leaving them behind unsupervised. Defendant nevertheless maintained that she visited, at least in the beginning, "every other day" to provide food, water, and care for the dogs. However, defendant admitted that she visited the dogs less frequently over time, eventually skipping "a week or so." Defendant stated that "it was summer of 2021" when sooner or later, she went to the residence and found that her dogs had passed away. Defendant explained that because she "did not know what to do" after discovering the deceased dogs, she left their remains inside the property. Defendant specified that the tenants began renting from her in September 2021 and, still not having disposed of the dogs by this point, admitted that she padlocked the dogs' bodies behind the door of her upstairs bathroom. Ultimately, when asked whether she intentionally abandoned her dogs, defendant said that she was "not 100 percent sure if [she] did it on purpose or if [she] was just focused on other things."

Defendant pleaded guilty to third-degree killing or torture of an animal, and the sentencing guidelines provided for a recommended range of zero to nine months in jail. The trial court instead elected to sentence defendant to 32 to 48 months' imprisonment, which it specified was the "maximum sentence allowable by law." This appeal followed.

## II. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Whether a departure is reasonable is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) *(Steanhouse II)*.

## III. ANALYSIS

Defendant argues that she is entitled to resentencing because the trial court failed to provide proper explanation for the extent of its departure sentence of 32 to 48 months' imprisonment. We agree that further proceedings are warranted.

In 2015, our Supreme Court ruled that sentencing guidelines are no longer mandatory and are now advisory. *Lockridge*, 498 Mich at 391. Still, the sentencing guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion[,]" and "trial courts 'must consult those Guidelines and take them into account when sentencing.' " *Id.*, quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). Trial courts may exercise discretion in imposing a sentence that departs from the sentencing guidelines, but such a departure must be reasonable. *Lockridge*, 498 Mich at 391-392.

Appellate courts apply the "reasonableness" standard in their review of sentence departures, which asks "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990)." *Steanhouse II*, 500 Mich at 459-460. The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender[,]" and the trial court "must take into account the nature of the offense and the background of the offender." *Milbourn*, 435 Mich at

636, 651. The principle of proportionality is incorporated into the sentencing guidelines; thus, the guidelines "continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). In determining whether an upward-departure sentence is more proportionate than a sentence within the guidelines, courts, while employing the principle of proportionality, may consider several factors including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

"The trial court bears the burden of articulating the rationale for the departure it made." *People v Smith*, 482 Mich 292, 318; 754 NW2d 284 (2008). To allow for effective appellate review, the trial court's reasoning for its departure sentence "must be sufficiently detailed" and "include[] an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id.* at 311.

"[E]ven in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) *(Steanhouse III)*, vacated in part on other grounds 504 Mich 969 (2019). "If . . . the connection between the reasons given for departure and the extent of the departure is unclear, then the sentence cannot be upheld." *Smith*, 482 Mich at 314. An appellate court cannot "speculate about conceivable reasons for departure that the trial court did not articulate or that cannot reasonably be inferred from what the trial court articulated." *Id.* at 318. Further, "an appellate court cannot substitute its own judgment about why the departure was justified." *Id.* at 304.

Here, the trial court stated that the recommended sentencing guidelines were insufficient given the nature of defendant's case. The trial court reasoned:

> The guidelines are a recommendation from the legislature. And the Court finds that the recommendation is not proportional to the circumstances of this case. There are a number of circumstances not accounted for in the guidelines. And, in large part, that's because the law treats animals and humans differently.

> Under the law, animals are treated as property. . . .

> * * *

> And at the plea, [defendant], I asked you about your state of mind at the time of this offense. And you said, now that I read from the transcript, "I'm not 100 percent sure if I did it on purpose or I was just focused on other things."

> * * *

All three of the letters that were submitted on your behalf to the Court portray you as a caring person. Two of the three letters specifically highlight your kindness towards animals, and what good care you have taken of animals that were placed in your charge. So it's clear to the Court that you knew what was expected of you and you knew better. You knew that these dogs relied on your compassion and goodwill to survive.

Despite knowing that, you either killed them on purpose or you were just got too busy. These dogs would have been better off as strays than in your care. At least if they were out running wild, they would have had a chance at survival.

The Court notes that you pleaded guilty to one count of animal torture in exchange for the dismissal of another count. That dismissal has sentencing implications. . . .

The other important consequence is contained at MCL 750.50b(9). That subsection provides that a conviction for animal torture may run consecutive to any other crime arising out of the same transaction. So your plea agreement eliminates the possibility of consecutive sentencing here, reducing your maximum possible prison exposure from a total of eight years to just four years. The guidelines do not account for the nature of your plea agreement but it is a proper subject of sentencing consideration.

The Court is also troubled by your lack of insight into your criminal activity. Based on your statements at the plea and in the report, it appears that you are minimizing this crime and your participation in it. You suggest that this is a crime of inadvertence . . . . That position is not credible, and suggests to the Court that you lack insight into your criminal behavior. These animals did not die quickly, they did not die peacefully. And once they had passed, you put a lock on the door hoping no one would discover what you did.

\* \* \*

Here, you not only tortured these animals by starving them, you tortured them to death. The extreme inhumanity that you displayed warrants an extreme response.

Of the goals of sentencing, the Court finds the goals of punishment and deterrence particularly compelling in this case. The Court can best achieve those goals through a prolonged period of separation from society. The Court finds that its chosen sentence is reasonable and it's proportional to the facts and circumstances of this case, and you, Ms. Hoisington, as the offender. The Court would impose the -- the sentence it had chosen even if the guidelines were scored differently, or even in the presence of the other factors discussed by the Court.

The trial court appropriately explained its rationale for deciding to depart upward, specifically pointing to factors it believed were not accounted for in the guidelines. The trial court noted the difference in the treatment of animals and humans under Michigan law, where defendant's dogs were unable to be considered "victims" due to the general classification of animals as property. The trial court also determined that "the heartlessness of [defendant's] actions is highly relevant to sentencing." The trial court, referring to its reading of defendant's letters of support, observed that the letters depicted defendant as "a caring person" and accentuated the "kindness" and "good care" with which defendant previously

-4-

had treated animals.[3] The trial court then commented that, despite the letters' positive portrayals of defendant, it was still "clear to the Court that [defendant] knew what was expected of [her] and [she] knew better."

The trial court also defended its upward-departure sentence by mentioning the nature of defendant's plea agreement, where although the agreement "eliminate[d] the possibility of consecutive sentencing here, reducing [defendant's] maximum possible prison exposure from a total of eight years to just four years[,]" the characteristics of the plea were still "a proper subject of sentencing consideration."[4] The trial court further highlighted defendant's apparent lack of remorse for her actions, the "extreme inhumanity" defendant demonstrated, and "the goals of punishment and deterrence" in fashioning its sentence.

In reviewing the trial court's rationale reiterated above, we generally do not regard the trial court's reasons for the departure as improper. For example, it is true that defendant was convicted of a mere property offense but, animals are, naturally, different from inanimate objects. The fact that animals are different from inanimate objects and capable of feeling pain was not considered by the offense variables. See *Dixon-Bey*, 321 Mich App at 525 (explaining that "factors not considered by the guidelines" may warrant an upward departure). Moreover, it was appropriate for the trial court to consider the fact that two dogs were involved, thus supporting the two original charges, notwithstanding that one charge was dismissed as part of the plea agreement. See *People v Coulter*, 205 Mich App 453, 456; 517 NW2d 827 (1994) ("[T]his Court has recognized that a sentencing court may consider the nature of a plea bargain and the charges that were dismissed in exchange for the plea for which the court is sentencing."). By the

---

[3] In her brief, defendant addressed the trial court's reasoning here, stating that along with other positive factors, such as her "lack of criminal history and high education and employment," these factors were "only used by the court to Ms. Hoisington's detriment." Moreover, defendant claims that "[t]he court would not consider these mitigating factors to her benefit." We are not certain whether defendant intended for this claim to be addressed; regardless, we note that "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Trial courts are still, however, required to consider a defendant's background. *Milbourn*, 435 Mich at 651.

[4] Defendant argues that during the trial court's discussion of her plea, "[t]he court expressed its indignation that due to the plea agreement, the guidelines do not account for his [sic] inability to double her maximum time from 4 to 8 years." Defendant further states that the trial court's alleged indignation was "not an appropriate consideration due to the separation of powers[,]" reasoning that the "prosecution alone makes up the executive branch and therefore is the only entity authorized to make deals regarding charges a defendant faces." Even more, defendant contends that "[i]t is improper for the trial court to increase punishment due to its outrage at being unable to statutorily sentence higher." We are again not certain whether defendant intended for these claims to be addressed, and it also is unclear what legal argument defendant's analysis is raising, if any. In any event, defendant failed to adequately present and support these claims, rendering the claims abandoned. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (holding that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority").

same measure, it also was appropriate for the trial court to consider the fact that consecutive sentences would have been authorized for the two original charges under MCL 750.50b(9). See *id*.

Yet, "[t]oo frequently reasons are given for a sentence that apply equally well to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given." *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988). Here, the trial court did not articulate why a 23-month upward departure from the recommended sentencing guidelines, of zero to nine months, was more proportionate to the offense and the offender than a sentence that exceeded the guidelines by any lesser extent. Beyond stating that it believed it could "best achieve [the goals of punishment and deterrence] through a prolonged period of separation from society[,]" the trial court offered no further reasoning as to why the particular range of 32 to 48 months' imprisonment, more than three times the recommended sentencing guidelines range, is superior to any other proposed sentence.

Trial courts are not required to "sentence defendants with mathematical certainty. Nor are any precise words necessary for them to justify a particular departure." *Smith*, 482 Mich at 311 (footnotes omitted). Nevertheless, "[i]f the Court of Appeals determines that [the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *Steanhouse II*, 500 Mich at 476. Thus, due to the trial court's failure to articulate the necessary rationale for the departure's extent, the trial court abused its discretion in sentencing defendant. Accordingly, this sentence cannot be upheld.

Finally, it is noted that defendant summarily requests that this Court remand to a different trial judge. Because defendant failed to properly brief this issue beyond merely announcing her position, it is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). In any event, there is nothing in the record to suggest that the trial judge was biased. The sentencing transcript indicates that the trial judge gave full and fair consideration to the arguments raised by defense counsel, as well as the allocution by defendant herself.

## IV. CONCLUSION

In sum, we vacate defendant's sentence and remand to the trial court for that court to provide additional explanation for its upward-departure sentence or otherwise resentence defendant. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan